Anthony W. Kirk, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued February 5, 1982, before Judges Rogers, MacPhail and Doyle, sitting as a panel of three.

*John J. Walder*, with him *Richard M. Connelly*, and *William Shimer, Jr.*, for petitioner.

*Francine Ostrovsky*, Associate Counsel, with her *Joseph F. Bewick*, Associate Counsel, and *Richard L. Cole, Jr.*, Chief Counsel, for respondent.

Opinion by Judge MacPhail, March 31, 1982:

Anthony W. Kirk (Claimant) appeals here from a denial of unemployment compensation benefits by the Unemployment Compensation Board of Review, which affirmed a referee's decision disqualifying him under Section 402(b)(1)[1] of the Unemployment Compensation Law (Act), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b)(1), on the ground that he voluntarily terminated his employment.

---

[1] This provision was amended by Section 13 of the Act of July 10, 1980, P.L. 521 and now appears as Section 402(b) of the Act, 43 P.S. §802(b).

Claimant had been earning $9.60 per hour as a tire curer for Firestone Tire and Rubber Co., when on February 8, 1980, he was laid off. He had been with Firestone for over seven years.

One week after Firestone laid off Claimant he applied for a job with Pottstown Memorial Medical Center (Employer). A few months later Claimant was hired as a cook at a pay rate of $5.35 per hour. Although his work was to begin on Monday, July 14, 1980, Claimant was also required to report for orientation on Friday, July 11, 1980. At orientation, Claimant was informed by the head dietician that he would be paid $5.12 per hour and that he was responsible for purchasing and cleaning his own uniforms. Instead of reporting for work on July 14, Claimant called the personnel office and said he was not going to report for work because the pay was insufficient. Claimant never inquired at the personnel office whether the correct wage was $5.35 per hour or $5.12 per hour and did not discuss the uniform issue. Claimant testified that he was told he would be paid for attending the orientation session but as of the date of the referee's hearing, he had not been paid.

In his argument to this Court, Claimant contends that the only evidence on the part of the Employer was a notation on Claimant's UC-100 card prepared by the Office of Employment Security. It is true that Employer did not attend the hearing and that Claimant's counsel objected to the admission of the UC-100 card as hearsay. Since, however, the disputed notation was not referred to by the referee or the Board in their findings or conclusions and does not form the basis for any of those findings or conclusions there has been no harm or prejudice to the Claimant by reason of the admission of the exhibit. All of the Board's findings are fully supported in this case from Claimant's own testimony.

Claimant's principal argument is that he was never employed by Employer. Claimant contends that he never accepted employment even though he was given a starting date and even though he admits that he attended the orientation session and was told at that session that he would be paid for attending. It is certainly true that unless an employment relationship existed, there could be no termination of employment, voluntary or otherwise. *Williams v. Unemployment Compensation Board of Review*, 61 Pa. Commonwealth Ct. 613, 434 A.2d 883 (1981). The facts in the instant case, however, are easily distinguished from those in *Williams*. Section 4 of the Act, 43 P.S. §753 provides the following definitions:

> (i) 'Employe' means every individual ... who is performing or ... has performed services for an employer in an employment subject to this act. ...

> (l)(1) 'Employment' means all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral. ...

We find all of the elements of "employment" present in the instant case. Claimant was hired prior to July 11, he reported for orientation on that date for approximately 6 hours and he was to be compensated for that time. The fact that he was not to begin his duties as cook until the following Monday does not, in our opinion, affect the employment relationship established by Employer's act of hiring and the Claimant's attendance at orientation. The orientation was for the benefit of both the Employer and the Claimant and was a part of the employment contract. When Claimant reported for orientation the employment relationship was established within the meaning of the Act. Neither do we believe that the fact that Claimant did

not actually receive compensation for attending the orientation affect the employment relationship. If he was promised compensation, Claimant is entitled to receive it.

Having determined that an employment relationship existed, there remains for our consideration Claimant's contention that he had necessitous or compelling reasons for terminating his employment.[2] Claimant's argument that the reduction in salary from the $9.60 per hour he received from his prior employer to the $5.35 or $5.12 he would receive from his new Employer would be relevant if benefits had been denied the Claimant because he had refused suitable work under Section 4(t) of the Act, 43 P.S. §753(t), but, of course, that is not the case here. It has long been the law of the Commonwealth that dissatisfaction with wages is not a necessitous or compelling reason for voluntary termination of employment. *Daniels v. Unemployment Compensation Board of Review*, 18 Pa. Commonwealth Ct. 508, 336 A.2d 662 (1975). Here, Claimant's sole reason for not reporting on July 14 was,

I didn't think the job's salary was enough. Salary-wise it was not fair. . . .

The discrepancy between the $5.35 per hour and $5.12 per hour might have been resolved easily had Claimant taken the time and the trouble to discuss the matter with personnel where he had been hired. The uniform problem could have been discussed at the same time.

---

[2] Section 402(b) of the Act provides in pertinent part:

An employe shall be ineligible for compensation for any week—

. . . .

(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, *irrespective of whether or not such work is in 'employment' as defined in this act.* . . . (Emphasis added.)

550

Under the circumstances, we must agree with the Board that Claimant has failed to demonstrate necessitous or compelling reasons which would justify his voluntary termination of employment.

Order affirmed.

### ORDER

AND Now, this 31st day of March, 1982 the order of the Unemployment Compensation Board of Review, dated October 23, 1980, as number B-189005 is affirmed.