Heidelberg Township, Lebanon County, Pennsylvania, Petitioner v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued November 12, 1985, before President Judge CRUMLISH, JR., Judge COLINS, and Senior Judge BARBIERI, sitting as a panel of three.

*John D. Enck, Rowe, Enck & Keys,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

*Ginevera M. Saylor,* with her, *Thomas K. Wynne,* for intervenor/claimant, Patrick Dostick.

OPINION BY SENIOR JUDGE BARBIERI, January 8, 1986:

Heidelberg Township (Township) appeals here the decision and order of the Unemployment Compensation Board of Review (Board) reversing the referee

and allowing Claimant Patrick Dostick benefits pursuant to Section 402(a) of the Unemployment Compensation Law (Law).[1]

Claimant was separated from his employment as a police officer for the Township on March 19, 1983 and in early April, 1983, he met a recruiter for the Pennsylvania National Guard (Guard) and was offered a position with the Guard, referred to as a ''slot,'' at the rank of E-5, or sergeant, under the Civilian Acquired Skills Program. Claimant accepted the offer and attended several weekend drills throughout the summer and subsequently received payment for attending the drills. Soon after accepting the offer of the E-5 slot and taking his oath, Claimant was informed a mistake had been made, that the E-5 slot was unavailable. Claimant was offered an E-4 slot, the rank of corporal. Claimant did not decline the offer, but in September he did not report for basic training at Fort Jackson, South Carolina as directed. Claimant subsequently received an honorable discharge from the Guard.

The unemployment compensation authorities reviewed Claimant's application for benefits pursuant to the provisions of Section 402(a) of the Law. Section 402(a), 43 P.S. §802(a), provides that any employee who refuses an offer of suitable work without good cause shall be ineligible to receive benefits. Section 402(a) was intended to apply only to *unemployed* claimants who refuse to accept an offer of suitable work. *Employed* claimants who refuse to accept an offer of continued employment are deemed to have quit their position and their application for benefits must be reviewed pursuant to Section 402(b) of the Law which denies compensation to a claimant who voluntarily leaves work without cause of a necessitous

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(a).

and compelling nature. *See Hospital Service Association v. Unemployment Compensation Board of Review*, 83 Pa. Commonwealth Ct. 165, 476 A.2d 516 (1984). We find all the elements of "employment" present in the circumstances of the instant case. Section 4 of the Law, 43 P.S. §753 provides the following definitions:

(i) 'Employe' means every individual . . . who is performing or has performed services for an employer in an employment subject to this act. . . .

(l).(1) 'Employment' means all personal service performed for remuneration by an individual under any contract of hire, express or implied, written or oral. . . .

Claimant was offered an E-5 slot in the Guard which offer he accepted. He attended several weekend drills for which he received remuneration. Claimant's separation from the Guard when he did not proceed to basic training as directed, must be deemed a voluntary termination reviewable under Section 402(b) of the Law, 43 P.S. §802(b).[2] *See Kirk v. Unemployment Compensation Board of Review*, 65 Pa. Commonwealth Ct. 545, 442 A.2d 1234 (1982) (attendance of claimant, hired as a cook, at a scheduled orientation for which he was to be paid established an employment relationship within the meaning of the law and his failure to

---

[2] We, therefore, need not address Claimant's contention that he cannot be disqualified under Section 402(a) of the Law because the employer did not provide the Office of Employment Security (OES) the requisite notice within seven days of Claimant's alleged failure to accept suitable employment. Section 402(a) includes a proviso that, in the event an employee refuses an offer of suitable employment without good cause, the employer must notify the OES within seven days of the making of the offer. *See Kiger v. Unemployment Compensation Board of Review*, 88 Pa. Commonwealth Ct. 376, 489 A.2d 977 (1985).

report to work the following Monday. was a voluntary quit under Section 402(b)).

The legal standards and the burden of proof are essentially the same under Sections 402(a) and 402(b) of the Law.[3] Therefore, instead of remanding for consideration of the facts in this case under Section 402 (b), we will proceed and decide the issues presented by applying the legal analysis applicable in Section 402(b) cases.[4]

The Board's findings in this case indicate that, at the weekend drills which Claimant attended, he learned that the E-5 slot was unavailable due to the unit being overstrength; Claimant was offered the rank of E-4, or corporal, a difference in pay of ap-

---

[3] A claimant who refuses an offer of work shoulders the burden of proving he did so for "good cause." A claimant who terminates his employment shoulders the burden of proving he did so for "cause of a necessitous and compelling nature." In *Kleban v. Unemployment Compensation Board of Review*, 73 Pa. Commonwealth Ct. 540, 459 A.2d 53 (1983), this Court noted that an earlier version of §402(b) contained the phrase "good cause" instead of "cause of a necessitous and compelling nature" but that our Supreme Court in *Savage Unemployment Compensation Case*, 401 Pa. 501, 165 A.2d 374 (1960) indicated that the terms are synonymous. *Accord Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977) ("good cause" equivalent to cause which is "necessitous and compelling"). *But cf. Trexler v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 180, 365 A.2d 1341 (1976) (1955 amendment to §402(b), which replaced "good cause" and accompanying exceptions with terms "necessitous" and "compelling nature" and left "good cause" in §402(a), indicates legislative intention to create separate tests in §402(a) "refusal" cases and §402(b) "voluntary termination" cases).

[4] *See Treon v. Unemployment Compensation Board of Review*, 54 Pa. Commonwealth Ct. 412, 421 A.2d 525 (1980), *rev'd on other grounds*, 499 Pa. 455, 453 A.2d 960 (1982) (remand unnecessary in cases where the applicability of Section 402(a) and 402(b) have been confused since both issues require the Claimant to present evidence regarding the suitability of the employment and his reasons for rejecting the employment).

proximately $20 per weekend drill. The Board found that Claimant did not reject the proposal but that from May, 1982 until September, 1982, Claimant continued to express his dissatisfaction with the lower rank. The Board found that he continued to believe throughout those four months that it was possible to get the E-5 rank. On September 19, 1982, Claimant failed to report to Fort Jackson for basic training, was listed as AWOL by the United States Army, and, on October 18, 1982, received his honorable discharge from the Guard.

By voluntarily accepting employment which he subsequently terminates, a Claimant has admitted to the initial suitability of the wages and conditions of employment. This presumption of suitability may be overcome by a claimant's proving a unilateral change in the initial working conditions rendering the position unsuitable. *Kistler v. Unemployment Compensation Board of Review*, 52 Pa. Commonwealth Ct. 465, 416 A.2d 594 (1980); *Mosely v. Unemployment Compensation Board of Review*, 15 Pa. Commonwealth Ct. 447, 327 A.2d 199 (1974). An unjustified demotion may render a position unsuitable providing necessitous and compelling cause to quit. *See Frankford Hospital v. Unemployment Compensation Board of Review*, 66 Pa. Commonwealth Ct. 452, 445 A.2d 256 (1982) in which we affirmed the Board's conclusion that the claimant, demoted after a two-day absence from work, had necessitous compelling cause to resign.

Claimant, in the instant case, accepted an E-5 slot. The availability of an E-4 slot only represented an unjustified demotion constituting cause of a necessitous and compelling nature for Claimant to quit unless, of course, Claimant consented to the lower rank, as the employer asserts. The employer argues that the Board capriciously disregarded the evidence of record when it failed to find, as the referee found, that Claimant could have requested an erroneous discharge but did

not make such a request, the inference being that Claimant acquiesced in the new condition of employment and, thus, his resignation was without necessitous and compelling cause. The employer went on to state in its brief, however, that the Board's finding, substituted for the above finding, that Claimant continued to express his dissatisfaction with the lower rank and thought it possible to get the E-5 rank, seemed to be supported by the record. The employer questions, however, whether Claimant *reasonably* believed he would get the higher rank.

When the party with the burden of proof has prevailed before the Board our scope of review is limited to determining whether *necessary* findings are supported by substantial evidence and whether an error of law has been committed, *Saxton v. Unemployment Compensation Board of Review*, 71 Pa. Commonwealth Ct. 636, 455 A.2d 765 (1983). We have reviewed the record and determine that the Board's finding that Claimant continued to believe, even after being informed that an E-5 slot was unavailable until the time came to leave for basic training, that it was possible to obtain the E-5 rank, is supported by the substantial evidence of record.[5] This being so, a finding regarding

---

[5] Claimant replied as follows to the questions posed to him by his attorney:

QCL: And subsequent to being sworn in what happened Mr. Dostrick? [sic] After you were sworn in what happened?

AC: After I was sworn in there was a lapse of possibly three weeks before I went to the unit in Hamburg to which I was assigned, Mr. Urer had indicated to me that he talked to the personnel at the armory in Hamburg and they were aware that I was coming up and I did make an appearance up there as I stated previously about three weeks after I was sworn in and at that time it was made known to me that there was a problem with my enlistment.

QCL: What was the problem with your enlistment?

the availability of an erroneous discharge was unnecessary; for if Claimant continued to believe an E-5 slot might be available there can be no inference that Claimant acquiesced in an E-4 slot.

AC: Well I was told up there that Mr. Urer, he screwed up that he didn't know what he was doing that

QCL: Someone told you this, is that person here today?

AC: Yes he is.

QCL: And who is that person?

AC: Sergeant Werley.

QCL: And what did Sergeant Werley tell you?

AC: He told me that Charles Urer who sworn me in in Lebanon didn't know what he was doing, he promised me something that they can't give me and I told Mr. Werley that Mr. Urer showed me in his book where it said that I could get in myself as an E-5, under the acquired skills program and Mr. Werley said there is small print to that that he said no we don't have a position, we don't have an E-5 slot available at the present time.

QCL: Well did it become clear to you at that time that you were not going to get the E-5?

AC: No I voiced my opinions to Mr. Werley that I was unhappy about this and he said well he will check into it further with I guess his higher ups, the I guess the unit from Lehighton which was in charge of army and he said that he would check into it but he wasn't sure what could be done seeing about me getting an E-5 and

QCL: After that time what eventually happened, how was the problem resolved?

AC: Well the problems went on and on until September, I spoke to Mr. Werley several times about the problem with the rank again and I spoke with other members of higher grade than me that were in the unit also about this problem and asked their opinion and I talked to another recruiter in Lancaster on Queen Street, National Guard Recruitment Medical Battalion and I spoke with a couple of other people relative to this problem and you know they had voiced their opinion as to what I should do and finally sometime in September Mr. Werley said that this is it, you are going to have to take this off or get out if you don't like it.

QCL: And what did you decide to do at that time?

Thus, Claimant had compelling cause to quit the Guard, and we will affirm the Board's orders.[6]

### ORDER

AND NOW, this 8th day of January, 1986, the orders of the Unemployment Compensation Board of Review, Nos. 223328, 223329, and 223330, dated October 17, 1983, are hereby affirmed.

AC: After the weekend I was suppose to go, I sort of decided that I am not going to do it, not with an E-4.
QCL: Did you ever agree to accept the E-4 rank and join the army reserves?
AC: No.

Mr. Werley also testified as follows:

QCL: You had stated that Sergeant Urer recruited the subject here?
AEWL: Yes.
QCL: And he was promised an E-5 by Charles Urer?
AEWL: Yes.
QCL: And was later informed that he would not be getting the E-5?
AEWL: Yes.
QCL: Did he express his dissatisfaction to you up until the last meeting in September.
AEWL: Yes.

[6] The Board issued three orders in this case, one for those weeks Claimant filed for regular benefits, one for those weeks Claimant filed for extended benefits, and another for those weeks Claimant filed for federal supplemental compensation.