Roger P. **KELLEY**, Appellant
in 87–3530

v.

**TYK REFRACTORIES COMPANY, Formerly TYK Swank Refractories Company.**

Roger P. **KELLEY**

v.

**TYK REFRACTORIES COMPANY, Formerly TYK Swank Refractories Company.**

Appeal of TYK REFRACTORIES COMPANY, INC.

Nos. 87–3530, 87–3577.

United States Court of Appeals,
Third Circuit.

Argued June 20, 1988.

Decided Oct. 28, 1988.

Rehearing Denied Nov. 29, 1988.

Ronald G. Backer (argued), Rothman, Gordon, Foreman and Groudine, P.A., Pittsburgh, Pa., for appellant cross appellee.

Richard S. Meyer (argued), Dilworth, Paxson, Kalish and Kauffman, Philadelphia, Pa., for appellee cross appellant.

Before GIBBONS, Chief Judge, and HIGGINBOTHAM, and HUNTER, Circuit Judges.

OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Roger P. Kelley appeals from an order granting a final judgment in favor of his employer, TYK Refractories, Co., Inc., ("TYK") on its motion for summary judgment on Kelley's action alleging employment discrimination in violation of 42 U.S. C. § 1981 (1982) ("§ 1981"). TYK cross-appeals from the district court's decision to remand Kelley's pendent state law claims to the Pennsylvania Court of Common Pleas for Allegheny County. We must determine whether the district court correctly held that certain factual findings regarding Kelley's termination made by the Pennsylvania Unemployment Compensation Board must be given collateral estoppel effect so as to preclude litigation of his § 1981 claim in federal court. We conclude that under Pennsylvania law, issue preclusion does not apply in the circumstances of this case. We will therefore reverse the district court's order granting summary judgment for TYK. We will dismiss TYK's cross-appeal for lack of appellate jurisdiction.

I. *Factual Background and Prior Proceedings*

TYK, which produces refractory products used in the steel industry, is a wholly owned subsidiary of Tokyo Yogyo, a Japanese trading company that purchased the company in April, 1982. Kelley, a white, male U.S. citizen, accepted a position as Chief Operating Officer and Executive Vice–President of TYK in October, 1982. A letter of employment from TYK entitled him to two types of TYK stock options at specified times, as well as a salary, fringe benefits, and executive perquisites. Joint Appendix ("Jt.App.") at 37–38. Kelley contends that he was induced to accept the position by the promises that he would have the authority to manage the company according to American customs, laws, and business principles, and that he would be promoted to president within one year, with a substantial increase in salary. *Id.* at 10, 15, 17 (Complaint at ¶¶ 5, 22, 28). Kelley avers that, having undertaken the job, he was asked by TYK, including specifically TYK's President Tomito, not only to institute Japanese business customs, such as morning chanting sessions during which company slogans were chanted in unison, but also to discriminate against older em-

ployees, to engage in unfair labor practices in dealings with the employees' bargaining agent, and to deprive workers of overtime and vacations, all in violation of numerous federal and state laws, among them the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (1982), the National Labor Relations Act, 29 U.S.C. §§ 151–187 (1982), and the Pennsylvania Minimum Wage Act of 1968, 43 Pa.C.S.A. §§ 333.101–.115 (Purdon 1964 & Supp.1988). Jt.App. at 12–17 (Complaint, ¶¶ 8–28). Kelley also alleged that TYK insisted that particular employees be fired in order to replace them with younger, Japanese males. Jt.App. at 27. Kelley alleged that TYK terminated Kelley's employment on October 11, 1983, and replaced him with a Japanese individual. *Id.* at 17, 27. In Count V of his complaint, Kelley contended that TYK discharged him and denied the exercise of his stock options because he is a white American citizen, and thereby violated his rights under 42 U.S.C. § 1981 (1982).[1] Jt.App. at 27.

In November 1983, Kelley filed a claim for benefits under the Pennsylvania Unemployment Compensation Law, 43 Pa.Stat. Ann. § 802(e) (Purdon 1983), which the Office of Employment Security initially denied. Jt.App. at 173 (Decision of the Unemployment Compensation Board of Review). Kelley appealed that decision, and on February 24, 1984, a four-hour hearing on his appeal was held before an unemployment compensation referee. The referee made the following factual findings:

5. [Kelley] attended a meeting on October 4, 1983, with senior company officials which was called for the purpose of discussing a memorandum drafted by the claimant enumerating his complaints.

Claimant was dissatisfied with the results of the meeting and, after one of the senior officials agreed with the claimant's assessment that there appeared to be little room for further negotiation, the claimant removed his company lapel pin and stated, "I'm leaving." He thereupon left the room and did not return thereafter to work.

6. [Kelley] did not intend by his actions of October 4, 1983, to resign his job. He eventually may have reached that decision but he had not reached that point as of October 4, 1983.

7. On October 6, 1983, [Kelley] received a letter from the company stating that his resignation was being accepted. He immediately notified the company that it was not his intention to resign his job.

8. If [Kelley] had not separated from his employment he would not have been allowed by the company to continue to operate as Chief Operating Officer but instead would have been restricted to functioning as Sales Manager.

*Id.* at 171 (Referee's Decision). The referee determined that Kelley's separation was involuntary, that it would be treated as a discharge, and that Kelley was not disqualified under § 402(b) of the Unemployment Compensation Law, 43 Pa.Stat. Ann. § 801 (Purdon 1983). Jt.App. at 172.[2] The referee stated further that, under § 402(e), the only just cause for discharge is willful misconduct on Kelley's part. Since TYK did not allege willful misconduct, the referee concluded that Kelley was entitled to benefits. *Id.* at 172. The referee did not discuss whether discrimination based on race or national origin contributed to Kelley's discharge.[3]

1. This statute provides:
   § 1981. Equal right under law
   All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to make the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
   42 U.S.C. § 1981 (1982).

2. This section provides that an employee is ineligible for compensation if "his [or her] unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." 43 Pa.Stat.Ann. § 801 (Purdon 1983).

3. The attorney who represented Kelley before the referee avers that the referee "stated that it was unnecessary to make any findings that public policy was violated because of discrimination based on age, national origin, contravention of wage and hour laws, or violation of Constitutional privileges." Jt.App. at 168–69 (Affidavit of Shelley W. Elovitz). This uncon-

TYK appealed the referee's decision to the Unemployment Compensation Board of Review. That tribunal, on July 17, 1984, without taking further evidence or conducting a hearing, determined that the referee's findings were erroneous and substituted the following pertinent findings of fact:

3. [Kelley] attended a meeting on October 4, 1983, with senior company officials which was called for the purpose of discussing a memorandum drafted by [Kelley] enumerating his complaints. [Kelley] was dissatisfied with the results of the meeting, and, after one of the senior officials agreed with [Kelley's] assessment that there appeared to be little room for further negotiations. [Kelley] removed his company pin and stated, I'm leaving.

4. Since [Kelley] communicated with his superiors through an interpreter, he was asked if he meant he was resigning. His response was that he did not use the word resign, but that he was leaving.

5. [Kelley] did not return for three days and did not report to anyone that he would be off or that he was taking vacation time.

*Id.* at 173 (Decision of the Unemployment Compensation Board of Review).[4] Based on the findings of fact the Board adopted, it concluded that Kelley was not discharged but that he had voluntarily terminated his employment, and had not borne his burden of showing cause of a necessitous and compelling nature for doing so. The Board found that Kelley's "behavior evidence[d] an intent to voluntarily terminate.... Even though Claimant has denied his intention to resign on more than one occasion, his protestations are not consistent with his

manifest behavior." *Id.* at 174 (Decision of the Unemployment Compensation Board of Review). Based upon these factual findings, the Board concluded that, "[h]aving voluntarily terminated, [Kelley] did not have a necessitous and compelling cause to do so. Even if [Kelley] had been restricted to Sales Manager, his salary and perquisites would have been unaffected. So that, the change of responsibility [did] not justify his termination." *Id.* at 174.

On August 17, 1984, following the decision of the Unemployment Compensation Board of Review, Kelley filed an eight-count complaint in the Court of Common Pleas of Allegheny County, alleging state claims including wrongful discharge, breach of contract, intentional infliction of emotional distress, estoppel and outrageous conduct. Jt.App. at 7 (Complaint). Kelley also included a claim stating a violation of his federal civil rights, specifically 42 U.S.C. § 1981. *Id.* at 27–28. TYK sought and obtained removal of the case to the United States District Court of the Western District of Pennsylvania based on his federal claim.

Following the removal, on October 31, 1984, TYK moved for summary judgment on all counts of Kelley's complaint. *Id.* at 57 (Defendant's Motion for Summary Judgment, or in the Alternative for Partial Dismissal).[5] Supporting this motion was a copy of the Board's decision and an affidavit of TYK's counsel averring that Kelley had fully litigated the nature of his discharge before the Board, which had concluded that Kelley had voluntarily terminated his employment without cause of a necessitous and compelling nature. *Id.* at 61–63 (Affidavit in Support of Motion for

---

tradicted statement refers only to the issue whether TYK directed Kelley to violate statutory and constitutional law, not whether Kelley was himself discriminated against on the basis of race or national origin. Kelley did not argue before the referee that TYK discriminated against him on the basis of his race or national origin. *See id.* at 161 (Brief in Support of Claimant's Request for Unemployment Compensation at 7).

**4.** As the ultimate fact-finder, the Board "has the authority to resolve conflicts in the evidence, make credibility determinations, and reverse

the referee's decision where necessary." *Kelley v. Commonwealth of Pennsylvania Unemployment Compensation Board of Review,* No. 2287 C.D. 1984, slip op. at 3 (Pa.Commw. July 9, 1985) (citing *Western Elec. Co. v. Unemployment Compensation Board of Review,* 70 Pa.Commw. 334, 453 A.2d 48 (1982)).

**5.** TYK moved in the alternative for partial dismissal under Fed.R.Civ.P. 12(b)(1) and (6) of Counts I (Wrongful Discharge), VI (Intentional Infliction of Emotional Distress) and VIII (Outrageous Conduct). Jt.App. at 57.

Summary Judgment). On July 22, 1984, the district court stayed all proceedings pending the outcome of Kelley's state appeal on his unemployment compensation claim.

Kelley petitioned the Commonwealth Court for review of the Board's decision on November 30, 1984. In a July 9, 1985 memorandum and order, that court affirmed the order of the Unemployment Compensation Board of Review, reasoning that the Board was correct in its determination that "the change in job responsibilities alone did not justify Kelley's voluntary termination." *Kelley v. Commonwealth of Pa. Unemployment Compensation Board of Review*, No. 2287 C.D. 1984, slip op. at 5 (Pa.Commw. July 9, 1985).[6] The commonwealth court denied, without comment, Kelley's application for reargument, Jt.App. at 185, as did the Pennsylvania Supreme Court his petition for allowance of appeal. *Id.* at 186. Thereafter, the district court on July 8, 1987, entered summary judgment on behalf of TYK on Kelley's § 1981 claim, reasoning that:

> [t]he decision of the Pennsylvania Unemployment Compensation Board of Review that plaintiff quit his job with the defendant without a necessitous and compelling reason which has since been affirmed upon review by the Pennsylvania Commonwealth Court and the Pennsylvania Supreme Court is entitled to collateral estoppel effect and precludes Kelley from bringing any claim on the basis that he was wrongfully discharged.

*Kelley v. TYK Refractories, Inc.*, Civ. No. 84–2312, slip op. at 3 (W.D.Pa. July 14, 1987). The sole basis for the district court's holding regarding collateral estoppel was its statement that under *University of Tenn. v. Elliot*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), "findings of a state administrative agency, acting in a judicial capacity, are entitled to preclu-

sive collateral estoppel impact in a case brought under Reconstruction Civil Rights statutes, even absent judicial review." *Kelley v. TYK Refractories, Inc.*, No. 84–2312, slip op. at 4 (W.D.Pa. July 14, 1987).

Having dismissed Kelley's federal claim, the district court remanded Kelley's pendent state claims to the Court of Common Pleas.

## II. *Kelley's Appeal*

### A.

We review a grant of summary judgment for legal error, testing the record by the same standard that the district court was required by Fed.R.Civ.P. 56 to apply. *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 244 (3d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 155, 98 L.Ed.2d 110 (1987). Under this standard, a trial court may enter summary judgment if there is no dispute as to any material fact and the moving party is entitled to judgment as a matter of law. The district court in this case made no findings regarding the existence of factual disputes material to a § 1981 claim, but rested its decision solely on the issue preclusive effect of the Board's decision. Accordingly, the question before us on this appeal is whether the district court correctly interpreted the applicable law in its holding that, under the doctrine of collateral estoppel, Kelley is precluded by the Unemployment Compensation Board of Review's findings from litigating the issue of the nature of his departure from TYK in the context of his § 1981 claim before the district court.[7]

### B.

In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the

---

6. The Commonwealth Court stated that it could not "consider additional causes raised by Kelley to justify his voluntary quit because he did not raise those issues at the administrative level." *Kelley v. Commonwealth of Pennsylvania Unemployment Compensation Board of Review*, No. 2287 C.D. 1984, slip op. at 6 n. 3 (Pa.Commw. July 9, 1985) (citing Pa.R.App.P. 1551).

7. Because allegations of racial discrimination are not a necessary element of an unemployment compensation claim under Pennsylvania law, the doctrine of claim preclusion is not before us.

Supreme Court held that 28 U.S.C. § 1738 [8] requires federal courts adjudicating an action under 42 U.S.C. § 1983 to give issue and claim preclusive effect to the previous judgment made with respect to the same claim by a state court. The Court explained further that, in enacting § 1738, "Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the state from which the judgments emerged would do so." *Id.* at 96, 101 S.Ct. at 415; [9] *see also Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 1331, 84 L.Ed. 2d 274 (1985) (claim preclusion) ("Section 1738 embodies concerns of comity and federalism"), *reh'g denied,* 471 U.S. 1062, 105 S.Ct. 2127, 85 L.Ed.2d 491 (1985). *Allen* concerned issue preclusion in a § 1983 action based on a prior criminal conviction, whereas we are concerned here with the issue preclusive effects of a state administrative agency's determination, affirmed by a state court. Although § 1738 does not apply to state administrative agency proceedings, the Supreme Court has held that preclusive effect must be granted to even unreviewed state agency decisions in subsequent actions under any of the Reconstruction civil rights statutes. *University of Tenn. v. Elliott,* 478 U.S. 788, 796–97, 106 S.Ct. 3220, 3225–26, 92 L.Ed.2d 635 (1986). The Court stated that, in such cases,

> when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties

have had an adequate opportunity to litigate,' [U.S.V.] *Utah Construction & Mining Co.,* [384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966) ], federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts. *Id.* at 799, 106 S.Ct. at 3227; *cf. Kremer v. Chemical Constr. Co.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (Section 1738 requires federal courts in cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982 & Supp.1986), to give preclusive effect to a state court decision reviewing a state administrative agency's determination of an employment discrimination claim), *reh'g denied,* 458 U.S. 1133, 103 S.Ct. 20, 73 L.Ed. 2d 1405 (1982). Assuming the constitutional adequacy of the state proceedings in this case, we are therefore required to give the Unemployment Compensation Review Board's factfinding the same preclusive effect to which it would be entitled in the Pennsylvania courts.[10]

The district court in this case, although it cited both *Kremer* and *Elliott,* erroneously omitted to analyze Pennsylvania law concerning collateral estoppel principles. *See Ross v. Communications Satellite Corp.,* 759 F.2d 355, 361 (4th Cir.1985) (in Title VII action, district court erred in neglecting to examine state law in its collateral estoppel ruling). We would nevertheless be required to affirm the district court's judgment if we found that under Pennsylvania law, the Pennsylvania courts would themselves give issue preclusive effect to the

---

8. This statute provides:
   [t]he ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State....
   28 U.S.C. § 1738 (1982).

9. The Court in *Allen* noted that the case "does not involve the question whether a § 1983 claimant can litigate in federal court an issue he might have raised but did not raise in previous litigation." *Allen,* 449 U.S. at 94 n. 5, 101 S.Ct. at 415 n. 5.

10. The Court in *Elliott* did not decide whether the administrative hearing in that case satisfied the standard of constitutional due process set

out in *Utah Mining,* because the issue was not decided below. *Elliott,* 478 U.S. at 799 n. 8, 106 S.Ct. at 3227 n. 8; *see also Kremer,* 456 U.S. 480–81, 102 S.Ct. 1896–97 (full and fair opportunity to litigate the claim required). Kelley has not challenged the constitutional adequacy of the state proceedings in this case. Moreover, we conclude that the Pennsylvania courts would not grant issue preclusive effect to the Unemployment Compensation Board of Review's decision. We therefore need not decide whether the due process clause requires us to afford issue preclusive effect to the judicially affirmed findings of the Pennsylvania Unemployment Compensation Review Board under the circumstances of this case.

Unemployment Compensation Board of Review's findings in this § 1981 action. Having considered the Pennsylvania law of issue preclusion as established by its courts, we cannot conclude that, under the circumstances of this case, a Pennsylvania court would hold Kelley collaterally estopped from pursuing his § 1981 claim.

In Pennsylvania:

a plea of collateral estoppel is valid if 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, and 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Safeguard Mut. Ins. Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975) (citation omitted) (cited with approval in *Odgers v. Commonwealth Unemployment Compensation Board of Review,* 514 Pa. 378, 389, 525 A.2d 359, 364 (1987)); *see also Davis v. United States Steel Supply,* 688 F.2d 166, 173 n. 9 (3d Cir.1982) (en banc) (dictum citing *Safeguard* as stating Pennsylvania collateral estoppel standard), *cert. denied,* 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983).

Kelley concedes that there was a final judgment on the merits of his eligibility for unemployment compensation, and that he was a party to that adjudication. He argues, however, that the issue of job termination decided by the Unemployment Compensation Board of Review is not identical, within the meaning of collateral estoppel law as it would be applied by the Supreme Court of Pennsylvania, to the issue of job termination to be decided in the context of Kelley's § 1981 claim. TYK asserts in response that because the Unemployment Compensation Board of Review decided that for purposes of his unemployment compensation claim, Kelley's departure from TYK was neither an actual discharge nor a voluntary departure for a necessary

and compelling cause, the Board's decision precludes Kelley from litigating the issue of the nature of his employment termination in the context of his race discrimination claim. We are not persuaded that the Pennsylvania Supreme Court would conclude that the issue of discharge before the Board is identical to the issue of discharge as presented in Kelley's § 1981 claim and, therefore, we reject TYK's assertion.

Our conclusion derives principally from an opinion of the Pennsylvania Supreme Court, *Odgers v. Commonwealth Unemployment Compensation Board of Review,* 514 Pa. 378, 525 A.2d 359 (1987), in which that court denied issue preclusive effect to an issue decided earlier under one statute in a subsequent action involving an apparently identical issue arising under a different statute. In the first action, the Commonwealth Court determined that a work stoppage in which Pennsylvania teachers were engaged, was a strike within the meaning of the Public Employe Relations Act (PERA).[11] The teachers subsequently applied for unemployment compensation, and the Pennsylvania Unemployment Compensation Board of Review ruled that the teachers were collaterally estopped by the court decision under PERA from litigating the nature of their work stoppage and asserting that it was a lockout under the Pennsylvania Unemployment Compensation Act. The Pennsylvania Supreme Court declined to give effect to the earlier characterization of the work stoppage because in its view the "determination of what constitutes a strike for purposes of PERA is not coextensive with the determination whether a work stoppage is a strike or a lock-out under the terms of the Unemployment Compensation Law." *Id.* at 389, 525 A.2d at 364. The court traced the incongruity between the two statutes to the fact that they "were enacted to promote decidedly different public policies." *Id.* at 387, 525 A.2d at 363. *Odgers* concluded that the earlier commonwealth court determination under PERA was interpreting a statute that was designed to prevent

---

**11.** This action is reported as *Philadelphia Fed'n of Teachers v. Thomas,* 62 Pa.Commw. 286, 436 A.2d 1228 (1981). *Odgers,* 514 Pa. at 384, 525 A.2d at 362.

strikes by "promot[ing] orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare." *Id.* at 388, 525 A.2d at 364 (quoting 43 Pa.Stat. § 1101.101). By contrast, the Board's determination was based on the Pennsylvania Unemployment Compensation Act, which was designed to be for the "benefit of persons unemployed through no fault of their own." *Id.* at 388, 525 A.2d at 364 (quoting Pa.Cons.Stat.Ann. § 752). The Pennsylvania Supreme Court found that the two "acts embody different policies and involve different rights (the former attaching to the collective and the latter to the individual)." *Id.* at 389, 525 A.2d at 364. It concluded that although the courts "have sought ... to describe the contours of the ... work stoppage in terms that on the surface appear identical, the issue litigated [in the first action] is not identical to the issue now before us. Thus we are not constrained to give it preclusive effect." *Id.* at 389, 525 A.2d at 364.[12]

We conclude similarly that § 1981, a reconstruction era civil rights statute, embodies different rights and involves different public policies than the Pennsylvania Unemployment Compensation Law and for that reason we cannot conclude that the Pennsylvania Supreme Court would find issue preclusion appropriate in this case. Pennsylvania's unemployment compensation statute addresses the evil of economic insecurity in that state due to unemployment. *Odgers*, 514 Pa. at 388, 525 A.2d at 364 (citing § 3 of the Pennsylvania Unem-

ployment Compensation Law, 43 Pa.Stat. § 752). It provides temporary monetary assistance to unemployed Pennsylvania workers in order to alleviate "economic distress in individual cases, where employees become unemployed through no fault of their own." *Id.* at 389, 525 A.2d at 364 (citing *Penn Hills School Dist. v. Unemployment Compensation Bd. of Review*, 496 Pa. 620, 624–25, 437 A.2d 1213, 1215 (1981); *Philco Corp. v. Unemployment Compensation Bd. of Review*, 430 Pa. 101, 110, 242 A.2d 454, 459 (1968)). This purpose is entirely different from that of 42 U.S.C. § 1981, which grants to all persons within the United States "the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," and seeks to ensure that all persons within the United States are subjected "to like punishment, pains, penalties, taxes, licenses, and exaction of every kind, and to no other." [13] The eradication of unlawful discrimination that Congress intended to accomplish through § 1981 is not encompassed by Pennsylvania's Unemployment Compensation law.

As in *Odgers*, the lack of identity of issues is manifest in the absence in the first adjudication—in Kelley's case, before the referee and Board—of any reference to facts relating to the central concern of the second action. In *Odgers*, the Commonwealth Court gave no consideration to the problem of unemployment compensation addressed by Pennsylvania's Unemploy-

---

**12.** TYK argues that collateral estoppel could not have been applied in *Odgers* because the findings in question applied to different time periods. Brief of the Appellee/Cross–Appellant ("TYK Brief") at 19. The work stoppage in *Odgers* began on September 8, 1981 and lasted through October 27, 1981. *Odgers*, 514 Pa. at 385, 525 A.2d at 362. During this period, the teachers applied for unemployment compensation benefits for the weeks ending September 19 and September 26, 1981. *Id.* at 384, 525 A.2d at 362. TYK argues that the Commonwealth Court held that the work stoppage was a "strike" after October 27, 1981. TYK Brief at 19. The court in *Odgers*, however, states that the Commonwealth Court found that the employees were

engaged for the duration of the work stoppage in a strike within the meaning of PERA, but that it was illegal only after October 27, 1981. *Odgers*, 514 Pa. at 386, 525 A.2d at 363. The Pennsylvania Supreme Court's decision not to give effect to the characterization of the work stoppage as a strike therefore depends on its rejection of collateral estoppel effect where decidedly different public policies embodied in each statute.

**13.** Civil Rights Act of 1866, ch. 31, § 1, 14 Stat. 27, *reenacted*, Civil Rights Act of 1870, ch. 114, §§ 16, 18, 16 Stat. 144 (codified at 42 U.S.C. §§ 1981, 1982 (1982)).

ment Compensation Law, while in this case, each of the tribunals' decisions—those of the referee, the Board, the Commonwealth Court—is devoid of any discussion of race discrimination, the prohibition against which is the intent of § 1981. The referee found no facts concerning the presence or absence of race discrimination against Kelley or any other employees of TYK. With respect to the question whether there was a necessary and compelling reason for Kelley to voluntary depart TYK, the Board decided only this precise question: that the referee was incorrect in concluding that a proposed job transfer, from Chief Executive Officer to Sales Manager, without decrease in salary or perquisites, constituted necessitous and compelling cause for a voluntary termination. The Board, like the referee, found no facts concerning the presence or absence of race discrimination. Moreover, since the referee had made no findings concerning discrimination, on the record before it, consideration of race discrimination was not essential to the Board's judgment. In turn, nothing in the Board's decision required the Commonwealth Court to address facts relating to race discrimination. In a § 1981 action, however, the existence of race discrimination in connection with the discharge is central to the litigation. Because the issue of discharge as it arises under § 1981 is not identical to the issue in the context of the Pennsylvania Unemployment Compensation Law, we cannot say that it was actually determined before the referee and the Board. Yet actual determination, or actual litigation, is a requirement of the doctrine of collateral estoppel as applied by the Pennsylvania courts. *See McCarthy v. Township of McCandless*, 7 Pa.Commw. 611, 618–19, 300 A.2d 815, 820–21 (1973) (where second action is on different claim, judgment in prior action operates as estoppel in second action "only as to those matters in issue that (1) are identical; (2) were actually litigated; (3) were essential to the judgment ... and (4) were 'material' to the adjudication") (recapitulating the rule set forth in § 68(1) of the Restatement of Judgments).[14]

TYK argues to the contrary that the Board, by determining that Kelley was not discharged but rather voluntarily left his work "without cause of a necessitous and compelling nature," 43 Pa.Stat.Ann. § 802(b), did adjudicate the identical issue. TYK supports this argument by contending that the standard for determining good cause for voluntarily leaving employment under Pennsylvania law, *see Taylor v. Commonwealth Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977),[15] is the same as the objec-

**14.** The United States Supreme Court has instructed that in predicting how a state's highest court would rule on a question, some weight should be accorded to a lower state court's decision, although the "'the decision [is] not controlling ...' where the highest court of the State has not spoken on the point." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 662 (3d Cir.1980) (quoting *Commissioner v. Estate of Bosch*, 387 U.S. 456, 471, 87 S.Ct. 1776, 1785, 18 L.Ed.2d 886 (1951)), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980). In this instance, the reasoning of the earlier appellate court is consistent with and supports the Pennsylvania Supreme Court's decision in *Odgers*. *See Becker v. Interstate Properties*, 569 F.2d 1203, 1206 (3d Cir.1977) ("federal court must be sensitive to the doctrinal trends of the state whose law it applies"), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). Although we view *Odgers* as controlling our decision, we find that the reasoning in *McCandless* illuminates that case. *Cf. BMY v. Commonwealth of Pa. Unemployment Compensation Bd. of Review*, 94 Pa.Commw. 579, 588, 504 A.2d 946, 951

(1986) (findings of a federal court cannot have res judicata effect or collateral estoppel effect in a separate proceeding involving identical parties where actions, relief sought, and issues of law are clearly different); *City of Philadelphia v. Stradford Arms, Inc.*, 1 Pa.Commw. 190, 195–96, 274 A.2d 277, 280 (1971) (a second tribunal can only be bound by a finding of the first tribunal if the first tribunal had equivalent subject matter jurisdiction) (following Restatement of Judgments § 71 (1963)).

**15.** The *Taylor* standard is as follows:

Although the precise language used to describe the conditions of necessitous and compelling circumstances has varied from case to case, it can be said that 'good cause' for voluntarily leaving one's employment (i.e. that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner.

tive standard applied to constructive discharge claims under Title VII, *see Goss v. Exxon Office Sys. Co.*, 747 F.2d 885 (3d Cir.1984) [16]. The degree of commonality of whichever two standards would be applied is not irrelevant under Pennsylvania collateral estoppel law, *Public Serv. Mut. Ins. Co. v. Cohen*, 616 F.2d 704, 708 (3d Cir. 1980) (materiality of the issue to the prior case is a relevant consideration),[17] but it is not determinative where the identical issue was not decided. In the case before us, there are no facts in the referee's decision, or in any subsequent ruling, relating to whether Kelley's departure from TYK occurred in a context of race discrimination in his employment. Nor can we infer such findings from the Board's legal conclusion. Pennsylvania's collateral estoppel doctrine does not permit us to find that an issue has been adjudicated where each tribunal purportedly confronted with the issue has responded only with silence.

■ TYK also argues that the fact that the Board decision was reviewed and affirmed by the Pennsylvania courts reveals that the same courts would find that issue preclusion applies in this instance. We do not agree. Regarding the standard of review in appeals from Board rulings, the Pennsylvania Supreme Court has held that:

> [i]t is now axiomatic in an unemployment compensation case, that the findings of fact made by the Board, or by the referee as the case may be, are conclusive on appeal so long as the record, taken as a whole, contains substantial evidence to support these findings. The appellate court's duty is to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony, to see if substantial evidence for the Board's conclusion exists.

*Taylor*, at 474 Pa. 351, 355, 378 A.2d at 831. The appellate court acts on the record of the Board proceedings before it. Thus, in affirming the Board's findings in this case, the Pennsylvania courts were not reviewing findings of fact concerning discharge in the context of discrimination, since the Board made no such findings.

*Davis v. United States Steel Supply*, 688 F.2d 166 (3d Cir.1982) (in banc), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983) is not to the contrary. In that case, which was decided before the

---

*Taylor*, 474 Pa. at 358–59, 378 A.2d at 832–33 (citations omitted), *accord Heidelberg Township v. Commonwealth Unemployment Compensation Bd. of Review*, 94 Pa.Commw. 108, 112 n. 3, 503 A.2d 462, 464 n. 3 (1986).

16. The *Goss* standard, applied to Title VII claims, has been expressed as follows:

> We hold that no finding of a specific intent on the part of the employer to bring about a discharge is required for the application of the constructive discharge doctrine. The court need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.

*Goss*, 747 F.2d at 888. We note that the standards for determining race discrimination under Title VII and § 1981 are not the same. *See Croker v. Boeing Co.*, 662 F.2d 975, 984–88 (3d Cir.1981). It is unnecessary to decide here, and we do not, whether the *Taylor* and *Goss* standards are the same, or even whether the standard for necessary and compelled terminations under the Pennsylvania Unemployment Compensation Law and for constructive discharge under § 1981 are the same.

17. In *Public Service*, the district court held that under Pennsylvania law, a finding of insurance company liability collaterally estops a subsequent claim against an insurance company agent based on the same set of events. We reversed, holding that since the state court had considered whether the company was liable, and not whether an individual within the company was personally liable, issue preclusion was not applicable. We stated that

> [t]he fact that an issue arises in a slightly different context does not necessarily mean that collateral estoppel is inapplicable. Nevertheless, the materiality of the issue in the prior case, or the degree of importance attached to it there, may have a bearing on whether the question was in fact identical and whether the estopped party had an adequate opportunity to contest the matter.

616 F.2d at 708. In this case, where the Board considered only the issue of Kelley's departure, but not whether discrimination based on race or national origin was a factor in that departure, the immateriality of the question of discrimination to the Board's decision supports our conclusion that the two issues we are considering are not identical.

Pennsylvania Supreme Court's ruling in *Odgers*, we held that a state court judgment reversing on the merits a finding of employment discrimination by the Pittsburgh Commission on Human Relations constituted full and fair adjudication of Davis's race discrimination claim, so that her federal action under § 1981 was barred by res judicata. *Id.* at 173. We noted, in dictum, that collateral estoppel would bar Davis's federal claim. *Id.* at 173 n. 9. There is a critical difference with respect to issue preclusion between the case presently before us and *Davis*. The Unemployment Compensation Board of Review did not decide the identical issue raised by Kelley's § 1981 claim, whereas in *Davis*, racial discrimination against Davis was the central issue decided by the administrative agency, and identical to the issue sought to be precluded in Davis's § 1981 action.[18]

We are convinced, in light of *Odgers* and the other considerations we have discussed, that the Pennsylvania courts would find that the issue resolved by the referee and Board and the issue to be decided under

§ 1981 are not identical for purposes of collateral estoppel.[19] We hold, therefore, that the issue of whether TYK discharged Kelley from his employment in violation of 42 U.S.C. § 1981 is not precluded by the decision of the Pennsylvania Unemployment Compensation Board of Review and remains open on remand.[20] *See Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897.

### III. *Pendent State Claims*

■ In connection with its order granting summary judgment to TYK on the collateral estoppel issue, and dismissing Kelley's sole federal claim, the district court elected to remand Kelley's pendent state claims to state court rather than to dismiss them. Our reversal of the district court's holding on issue preclusion, however, removes the basis of the district court's decision to remand Kelley's pendent state claims, since it does not appear that the district court intended to remand the state claims even if a federal cause of action existed. *Cf. Carnegie–Mellon Univ. v. Cohill*, —— U.S. ——, 108 S.Ct. 614, 98

---

18. Asked to determine the collateral estoppel effect of an apparently identical issue relevant to sequential adjudications under federal statutes, we took a similar approach to that of the Pennsylvania Supreme Court in *Odgers*. In *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329 (3d Cir.1985), a newspaper writer brought suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1982), against a newspaper, seeking to be designated a regular staff member rather than a non-staff writer. The district court ruled against the writer on his § 301 claim, and in its reconsideration of that claim, also ruled on the legal significance of certain oral promises and statements made by the newspaper. We held that this ruling could have neither collateral estoppel nor res judicata effect in the writer's subsequent contract action. Noting that Koshatka did not plead a common law breach of contract theory in his complaint, we stated that "[i]n this case, the issues involved are not identical; a federal § 301 action is distinct from a common law oral contract claim." *Koshatka*, 762 F.2d at 337. Similarly here, Kelley did not plead a § 1981 violation in his unemployment compensation claim, and the issues involved in the two actions are distinct.

19. Kelley also argues that collateral estoppel would be barred under Pennsylvania law, because he lacked the full and fair opportunity to litigate the issue raised in his § 1981 claim. Because we conclude that, the identity of issues required before collateral estoppel will be ap-

plied under Pennsylvania law is lacking, we find it unnecessary to address this issue.

20. Other federal courts of appeals determining the collateral estoppel effect of a judicially reviewed state unemployment compensation ruling in subsequent employment discrimination actions under federal law, have also drawn the conclusion that the underlying state law would bar issue preclusion under these circumstances, and similarly did not reach the due process question. *See Hill v. Coca Cola Bottling Co. of N.Y.*, 786 F.2d 550 (2d Cir.1986) (under New York law, judicially affirmed administrative denial of unemployment compensation claim does not collaterally estop litigation of issue of termination in § 1981 claim because there was no full and fair opportunity to litigate discrimination claim where there was no significant exploration of the issue by appeal board and no mention of racial discrimination by the reviewing courts); *Ross v. Communications Satellite Corporation*, 759 F.2d 355 (4th Cir.1985) (under Maryland law, judicially affirmed denial of unemployment compensation claim does not collaterally estop litigation of discharge issue in Title VII claim because the issues are not identical where the applicable statutes have different legislative histories, purposes, scopes of coverage, standards, procedures and policies which may dictate opposite results).

L.Ed.2d 720 (1988). We will therefore vacate the district court's order.[21]

## IV. *Conclusion*

For the foregoing reasons, we will dismiss TYK's cross-appeal and reverse the district court's award of summary judgment for TYK, vacate the district court's order, and remand this case to the district court for further proceedings consistent with this opinion.[22]

---

21. We note that in so holding we are not ruling on the merits of TYK's cross-appeal, in which TYK argued that, having properly dismissed Kelley's federal claim, the district court abused its discretion by declining to exercise its jurisdiction to dismiss his pendent state claims as well. We would not do so even if we were not vacating the district court's order. TYK filed its notice of appeal on August 25, 1987, 42 days after the original order was entered on July 14, 1987 and 18 days after Kelley's notice of appeal on August 7, 1987. Fed.R.App.P. 4(a)(3) requires a party to file its appeal 30 days from the entry of judgment or 14 days from the date of timely appeal by another party, whichever period last expires. Fed.R.App.P. 26(b) prohibits appellate courts from enlarging the time for a notice of appeal to be filed. As TYK filed its notice of cross-appeal 4 days late, and was not granted an extension of time by the district court, *see* Fed.R.App. 4(a)(5) (extension of time for good cause or excusable neglect, upon application to district court within 60 days after final judgment), its appeal was untimely, and cannot support appellate jurisdiction. *See IUE AFL–CIO Pension Fund v. Barker & Williamson, Inc.,* 788 F.2d 118, 122 (3d Cir.1986).

22. Because the district court did not rule on any alternative bases for summary judgment or dismissal raised in TYK's motion below, we have no occasion to rule on those issues here.