535 A.2d 1090

**MELLON BANK, East Natl Assn**

v.

**Jeffrey K. RAFSKY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1987.

Filed Dec. 29, 1987.

586

Richard N. Lipow, Audubon, for appellant.

Howard Solomon, Media, for appellee.

Before CAVANAUGH, BECK and HESTER, JJ.

HESTER, Judge:

This is an appeal from an order denying Jeffrey K. Rafsky's petition to open or strike a judgment for $756,392 entered against him by confession. Mellon Bank confessed

judgment against Rafsky, president of a corporation indebted to the bank, under a suretyship agreement whereby Rafsky had personally guaranteed the corporation's debt. We affirm the order, holding that the trial court correctly applied the doctrine of collateral estoppel in refusing to open the judgment and that no defect on the face of the record warranted striking the judgment.

The international commercial transactions which form the background of this case were the subject of prior litigation in *Mellon Bank (East) N/A v. The Trend Group, Inc.*, 42 Pa.D. & C.3d 374 (Montgomery County, 1986). We quote at length from the trial court opinion to explain the factually complex litigation.

"[D]efendant, the Trend Group Limited, (Trend) seeks to have this Court open or strike a judgment by confession entered by plaintiff, Mellon Bank (East) National Association (Bank). On August 1, 1984 the Bank confessed judgment against Trend on a promissory note in the amount of $717,444.13. The note was executed by Trend on June 17, 1983 and secured part of an international financing arrangement wherein Trend Export Funding Company (TEFCO), a wholly owned subsidiary of Trend, contracted with a party in the Hashemite Kingdom of Jordan for the sale and delivery of certain heavy construction equipment. Trend filed a Petition to Open or Strike ... alleging that ... the Bank negligently mishandled certain security documents resulting in the construction equipment being delivered without the buyer first signing the documents. The petition also alleges the Bank manipulated maturity dates on certain notes which resulted in defenses being raised by the insurance company which insured the transaction. The petition seeks legal fees, travel and miscellaneous expenses. The hearing began on December 11, 1984. Additional testimony was taken on January 14 and 16, February 27 and 28 and March 4 and 5, 1985. The parties were also directed to argue one of the issues and this took place on August 27, 1985.

"During the course of the hearing Trend raised three additional defenses which were not mentioned in the first petition.... First, it claims the Bank coerced Jeffrey Rafsky, President and Chairman of the Board of Trend to sign the note at issue on behalf of Trend at meetings held on June 16 and 17, 1983. Second, it contends the Bank had a duty to inform Rafsky, before he signed the note, that a previous note securing the same transaction was purchased by the Bank 90% without recourse to TEFCO.

"Finally, Trend claims the Bank breached its duty under Section 4–501 of the Uniform Commercial Code and committed fraud in failing to notify Rafsky, before the execution of the June 17 note, that the purchaser of the equipment in Jordan had refused to sign a promissory note and pay a sight draft presented by the Bank's correspondent in Jordan.

"Trend is a financial service organization involved in equipment lease financing, both domestically and internationally, in addition to other types of financing. TEFCO, as noted above, is a subsidiary of Trend. On April 14, 1982 TEFCO obtained a master policy of export insurance from the Foreign Credit Insurance Association (FCIA) with respect to the sale of heavy construction equipment. On September 1, 1982 TEFCO obtained a non-acceptance endorsement to its FCIA master policy which provided coverage against a loss caused by failure or refusal of a foreign buyer to accept shipment of goods. In November of 1982 officers of TEFCO met with Mr. Yousef F. Jashan (Jashan), a road building contractor in Jordan, and after negotiation agreed to sell and deliver to him at the port of Aquaba, in Jordan, the heavy construction equipment in question. The sale totalled $1,529,391 conditional upon approval by the FCIA. The sale was approved and FCIA provided coverage against non-acceptance of the merchandise.

"In an effort to secure financing for the transaction, TEFCO contacted Girard International Bank (Bank). It agreed to extend TEFCO a $2,500,000 line of credit. As part of the agreement the Bank was to process the collec-

tion of all payments to be made by Jashan. During negotiations with TEFCO, Jashan executed a power of attorney in favor of Steven R. Michaels, and Philip T. Amico, President and Vice-President respectively. Both Michaels and Amico later executed a promissory note dated April 1, 1983 as attorneys-in-fact, obligating Jashan to pay TEFCO the sum of $1,529,391. On that same date TEFCO forwarded to the Bank certain collection documents which included a sight draft for $106,427.67. The draft represented TEFCO's commission on the transaction.

"The form sight draft included instructions for the bank to present the documents through Jordan Securities (Jordan). In addition to other instructions, the Bank was directed to contact Philip T. Amico in case of need. The Bank was further directed under a special instructions section, to "please have Yousef Jashan acknowledge the note by signing as the President and as the personal guarantor of the obligation. Have Bank (Jordan) release documents *only* upon signing of the note and payment of the sight draft. Please have Bank (Jordan) return signed note." The Bank forwarded the collection documents, with various instructions, to Jordan on April 18, 1983. Jordan was directed to "pls have Yousef Jahshan (sic) acknowledge the note by signing as the President and as the personal guarantor of the obligation. Release documents *only* upon signing of the note *and* payment of the sight draft. Pls return the signed note to us. Pls remit funds to us via telegraphic transfer through your New York correspondent under cable advice to us."

"On May 4, 1983 TEFCO executed a "specific transactional request" wherein it requested the Bank to purchase, 90% without recourse, $700,000 of the Jashan obligation. The request incorporated by reference a short term Hold Harmless Agreement executed by TEFCO on April 8, 1983. By the Hold Harmless Agreement TEFCO requested the Bank to purchase from time to time unpaid drafts, with the insured percentage without recourse. By the request TEFCO assigned the Bank $700,000 of its coverage under the

FCIA insurance policy. Under the Hold Harmless Agreement TEFCO agreed to hold the Bank harmless for losses occurring from any of five stated causes. The equipment which was the subject of the sale was delivered to the port of Aquaba in mid-March of 1983. It was released from the dock and came into Jashan's possession in April, '83 without his signature first being obtained on the promissory note or payment made on the sight draft.

"On June 8, 1983, believing that other transactions involving TEFCO in England and West Germany were fraudulent, the Bank brought civil actions in the District Court in New York and Connecticut. On June 9, the Bank obtained ex parte orders of attachment and levied upon various bank accounts of Trend and TEFCO, effectively halting their business operations.

"On June 12, Jordan notified the Bank that Jashan had refused to sign the promissory note or pay the sight draft.

"A meeting was held at the Bank's offices in Philadelphia on June 16 to discuss the suspect transactions and resolve matters so the attachments could be lifted. In attendance at the meeting were Jeffrey Rafsky, Fred Blume, Esq., and Roger Cox, Esq. for Trend, and Irwin Warren, Esq., Andrew Melnick, Esq., John York, Esq., Steven Kaplan, Esq., and Wesley Winfree, for the Bank. During the meeting, which began on the afternoon of the 16th and carried over into the early morning hours of the 17th, Rafsky and Blume were told that the Bank believed certain TEFCO transactions in England and West Germany were fraudulent. Trend agreed to pay the full indebtedness on them. The Bank also questioned the genuineness of the Jashan transaction, although never explicitly mentioning that Jashan had refused to sign the note and pay the sight draft. After extensive negotiations, Rafsky, on behalf of Trend, executed a promissory note in favor of the Bank for $700,000, thereby vitiating the specific transactional request executed on May 4, and transforming a 90% without recourse obligation into a 100% recourse obligation. In addition, the Bank required a personal guarantee of the transaction by

Rafsky and directed Trend to obtain a promissory note signed personally by Jashan. In December, 1983 Jashan signed such a note. Trend defaulted on the June 17, 1983 note and judgment was confessed by the Bank."

*Id.*, slip opinion, 1/8/86, at 1–8 (footnotes omitted). The court refused to open or strike the judgment. *Id.* at 15.

Its holding was based, inter alia, on the conclusion that the three additional issues raised during the course of the hearing had been waived for failure to include them in the petition to open or strike, as required by Pa.R.C.P. 2959(c). The court held, alternatively, that the latter two issues, that the Bank neglected a duty to disclose to Rafsky that the note was 90% without recourse and that the Bank breached its duty under U.C.C. § 4–501, were not supported by evidence which would justify submission of the issues to a jury, and the issues were thus defective under Pa.R.C.P. 2959(e).

During the course of the *Trend* litigation, the Bank confessed judgment against Rafsky individually pursuant to the suretyship agreement he had signed on June 17, 1983. Rafsky filed a petition to open or strike the judgment. Denial of this petition is the subject of this appeal. The court held that the doctrine of collateral estoppel precluded relitigation of the grounds Rafsky raised in support of opening the judgment, and that there was no defect in the record which would justify striking the judgment. Trial court opinions, 12/29/86, at 3–4, 3/27/87, at 3–4.

Appellant Rafsky raises three issues: 1) whether the court erred in applying the doctrine of collateral estoppel to deny appellant's petition to open or strike the judgment; 2) if collateral estoppel does not preclude litigation of appellant's defenses, whether the trial court misapplied the standard of review in Pa.R.C.P. 2959(e); and 3) whether the trial court erred in refusing to strike the judgment when an allegedly fatal defect appears on the face of the record.

The doctrine of collateral estoppel operates to prevent a question of law or an issue of fact which has once been litigated in a court of competent jurisdiction from

being relitigated in a subsequent proceeding. There is no requirement that there be an identity of parties in the two actions in order to invoke the bar. Collateral estoppel may be used as either a sword or a shield by a stranger to the prior action if the party against whom the doctrine is invoked was a party or in privity with a party to the prior action. Collateral estoppel applies if five elements are present: 1) the issue decided in the prior case is identical to the one presented in the later case; 2) there was a final judgment on the merits; 3) the party against whom the plea is asserted was a party or in privity with a party to the prior case; 4) the party against whom the doctrine is asserted or his privy has had a full and fair opportunity to litigate the issue in the prior proceeding; and 5) the determination in the prior case was essential to the judgment therein. *Schubach v. Silver,* 461 Pa. 366, 377, 336 A.2d 328, 333–34 (1975); *Matson v. Housing Authority of Pittsburgh,* 326 Pa.Super. 109, 112–13, 473 A.2d 632, 634 (1984); *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 236–37, 464 A.2d 1313, 1318–19 (1983); Restatement (Second) of Judgments § 27.

Appellant challenges only the fifth element; he argues that collateral estoppel cannot preclude his defenses in this case because the adverse determinations in the *Trend* case were not essential to the judgment. Three defenses are at issue:

1. Was Jeffrey Rafsky coerced into signing the corporate note of June 17, 1983, that is the principal note as opposed to the one which is the subject of this action?

2. Was the bank under a duty to disclose to Rafsky before he executed that note, that the specific transactional request executed by the corporate defendant's subsidiary in May of 1983 was 90% without recourse; and

3. Did plaintiff bank breach its duty under § 4–501 of the Uniform Commercial Code by failing to give notice of the consignee's refusal to sign a certain promissory note and sight draft upon receipt of the shipment and thereby

fraudulently induce Rafsky to sign that note as chief executive officer of the corporation?

The trial court had held in the *Trend* case that the latter two defenses were waived pursuant to Pa.R.C.P. 2959(c) and alternatively, were not supported by sufficient evidence under Rule 2959(e). In this case, the trial court held that collateral estoppel barred Rafsky from raising these issues since they had been fully litigated in the prior case.

As alternative grounds were given for the decision in the prior case, it is difficult to determine which was "essential to the judgment" to satisfy the test for application of the doctrine of collateral estoppel. Judge Brown, who decided both cases, evidently believed that the second reason for the *Trend* judgment—that Trend and Rafsky failed to produce sufficient evidence—was essential to the judgment, for the court was not satisfied to rely on the ground of waiver. It therefore appears that the fifth requirement for application of collateral estoppel has been satisfied with regard to the second and third defenses. The first defense, the alleged coercion of Rafsky, has been waived under Pa.R.C.P. 2959(c) for failure to include it in his petition to open or strike the judgment in this case. Trial court opinion, 12/29/86, at 3–4. *Wolgin v. Mickman,* 233 Pa.Super. 218, 225 n. 10, 335 A.2d 824, 827 n. 10 (1975).

The second issue in this appeal has been resolved by our disposition of the first issue. Due to our holding that the defenses are barred by collateral estoppel and waiver, we cannot address the merits of the defenses.

The final issue is whether the trial court erred in denying appellant's petition to strike. Appellant argues that appellee's complaint for confession of judgment averred only that two of three conditions precedent to the entry of judgment had occurred. Appellant has juxtaposed paragraph ten of the complaint, stating the conditions precedent, with paragraph fourteen, alleging occurrence of the conditions:

10. As more specifically set forth in Exhibit "C" hereof, Defendant is legally obligated to discharge the said indebtedness from Trend upon the occurrence of the following events:

A. Trend shall fail to make the payment due on the note.

B. The obligation represented by the note is not satisfied from the proceeds of an alleged obligation of a customer of TEFCO, i.e., the "Jahshan Notes" in accordance with the terms thereof.

C. The obligation represented by the Note and the Jahshan Notes is not satisfied (other than due to action or failure to act by [the Bank]) from a policy of insurance issued by the Foreign Credit Insurance Association ("FCIA") in favor of TEFCO with respect to the transactions pursuant to which the Jahshan Notes were issued within such period of time after March 1984 that FCIA would, in the ordinary course of business, satisfy such obligation (approximately six months). (Emphasis added.)

14. Accordingly, all of the events set forth in paragraph 10 hereinabove have occurred as follows:

A. Trend has failed to make payments due in connection with the Note as set forth hereinabove.

B. The obligation has not been satisifed from the proceeds of the Jahshan Notes.

C. The obligation has not been satisfied from the policy of insurance issued by FCIA despite the fact that Defendant and Trend have represented that the insurance claim has been pending for approximately one year, well in excess of the time provided for in the Suretyship Agreement.

---

Appellant argues that omission of the emphasized portion of paragraph 10.C. from paragraph 14.C. is a fatal defect which requires the striking of the judgment.

This argument is frivolous. Pa.R.C.P. 2952(e) states:

The complaint shall contain the following:

. . . .

(e) if the judgment may be entered only after a default or the occurrence of a condition precedent, an averment of the default or of the occurrence of the condition precedent; . . .

Paragraph fourteen of the complaint avers that all events in support of the entry of judgment have occurred, and incorporates by reference the earlier recitation of those events in paragraph ten, so the later specification was unnecessary and therefore surplusage. Moreover, if the omission were regarded as a defect, it would be a harmless and inconse-

596

quential technical defect which would not justify striking the judgment. *Equibank, N.A. v. Dobkin,* 284 Pa.Super. 143, 425 A.2d 461 (1981).

Order affirmed.