

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-13-1999

# Witkowski v. Welch

Precedential or Non-Precedential:

Docket 98-1213

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Witkowski v. Welch" (1999). *1999 Decisions*. Paper 99.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/99

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 12, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1213

JOSEPH A. WITKOWSKI, M.D.; GRACE WITKOWSKI;
JOSEPH A. WITKOWSKI, M.D., P.C. DEFINED
BENEFIT PENSION PLAN; JOSEPH A. WITKOWSKI,
M.D., TRUSTEE,

        Appellants

v.

ROBERT G. WELCH; ROBERT G. WELCH, P.C.;
INTREPID ONE SERVICES, INC.; HISTORICAL
SECOND STREET DEVELOPMENT ASSOCIATES;
ROBERT G. WELCH, GENERAL PARTNER;
ROBERT G. WELCH, TRUSTEE; RONALD J. SREIN,
MORTGAGEE

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 92-cv-00924)
District Judge: Hon. Robert F. Kelly

Argued December 17, 1998

BEFORE: SLOVITER and COWEN, Circuit Judges
and RODRIGUEZ, District Judge*

[Filed April 12, 1999]

_____

* Hon. Joseph H. Rodriguez, United States District Court for the District
of New Jersey, sitting by designation.

Richard K. Doty, Esq. (Argued)
131 North 20th Street
Philadelphia, PA. 19103

 Attorney for Appellants

James L. Griffith, Esq. (Argued)
Klett, Lieber, Rooney & Schorling
18th and Arch Streets
Two Logan Square, 12th Floor
Philadelphia, PA. 19103

 Attorney for Appellee

OPINION OF THE COURT

RODRIGUEZ, District Judge.

I.

At issue in this case is whether the doctrine of collateral estoppel applies to bar a claim of fraudulent conveyance and fraud alleged against a transferee of real property, where an arbitrator awarded damages for breach of fiduciary duty and fraud against the transferor of that property, but seemingly dismissed all other claims against the transferor, including the claim that he fraudulently conveyed the disputed property.

After extensive arbitration hearings which did not involve the transferee of the real property in question here, the arbitrator awarded the plaintiffs to that action $150,000 based on the defendant's breach of fiduciary duty and fraud under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. SS 1001 et seq. This award also dismissed in their entirety, but without specificity, other claims pressed against many other defendants. At the request of the prevailing plaintiffs, the District Court confirmed the arbitrator's award in all respects. Subsequently, based on that award and the doctrine of collateral estoppel, the District Court granted the defendant transferee's motion for summary judgment. Judgment was thus entered, dismissing the fraudulent conveyance claim

against the defendant transferee contained in Count V of plaintiffs' complaint. This appeal followed.

II.

Appellants in this action are Dr. Joseph A. Witkowski, individually, and as trustee of his pension plan, Joseph A. Witkowski, M.D., P.C. Defined Benefit Pension Plan, along with his wife, Grace, who is a beneficiary of the plan (collectively, "the Witkowskis"). Appellants were the plaintiffs in the underlying action claiming, inter alia, that a conveyance of real property was fraudulent and should be set aside. The principal defendant in the underlying controversy was Robert G. Welch ("Welch"), individually and as a General Partner and Trustee of other entities. These other legal entities which he allegedly controlled were also named as defendants in a five count complaint. [2] Finally, named as a defendant, but only to Count V of the Witkowskis' second amended complaint, was appellee Ronald J. Srein ("Srein"), the transferee of real property in which the Witkowskis now claim an interest.

A.

The events leading up to this appeal began in July of 1986, when the Witkowskis invested retirement funds held by a retirement plan[3] in an entity controlled by Welch.[4] Specifically, the Witkowskis invested $150,000 for the purchase of a 19.23% `Mortgage Participation Interest' which they believed was to be used to finance the

_____

2. The other named defendants include: Robert G. Welch, P.C.; Intrepid One Services, Inc., a corporation controlled by Welch; and Historical Second Street Development Associates, a limited partnership with Welch acting as the General Partner.

3. This plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. SS 1001 et. seq.

4. Welch was introduced to Grace and Joseph Witkowski back in 1991, when Welch formed Joseph A. Witkowski, P.C. for them. Over the next five years, the Witkowskis were impressed with his credentials as a lawyer and financial advisor, and came to rely upon him for legal and financial advice.

3

acquisition or renovation of 70 – 72 North Second Street in Philadelphia. The check drawing this money from their account was made payable to Historical Second Street Development Associates ("Historical"). A subscription agreement described the investment interests as "speculative investments which involve a substantial degree of risk." App. 211-12. The Witkowskis believed that a mortgage was to be made to Historical, a limited partnership which Welch controlled either as a trustee or general partner. They also believed that this mortgage, once recorded, would be the first on the property and thus serve to secure the investment. Apparently, no mortgage interest was ever recorded in Historical's name.[5]

What the record does reflect, however, is that a $1,400,000 mortgage was on the property, and that this mortgage was held by an entity called Follansbee-Merion Historic Associates ("FMHA"), another entity related to Welch. This mortgage first encumbered the property on December 31, 1985, yet it was not recorded until April of 1990. According to the testimony of Welch, FMHA was the mortgagee of the property, and Historical was the mortgagor. This, of course, was the same entity in which the Witkowskis bought an interest for $150,000.

Srein entered this situation in July 1989 when, at the request of Welch, he invested $300,000 in a limited partnership called St. George Mortgage Associates. The record contains a subscription agreement signed by Welch, however, it was neither notarized nor signed by Srein. According to Welch's testimony, this investment found its way into the FMHA account, and was used for renovations and improvements to the property at 70-72 North Second Street.[6] When Welch failed to make payments as required of

_____

5. According to Welch, the property in question at North 70-72 Second Street was purchased by Historical sometime in 1985, before the Witkowskis made their initial investment.

6. The Appellees strongly dispute this contention. According to the testimony of Bernard Egan, C.P.A., at the arbitration hearing, the money that went into St. George was initially transferred to FMHA, which then disbursed several checks, including one for $320,000 to the Kenver Corporation (yet another legal entity controlled by Welch). Money disbursed from the account of this corporation does not reveal expenses paid for the benefit of Historical. App. 343-45.

4

him to Srein, legal action was threatened. To assuage Srein, Welch executed a personal $300,000 promissory note in January 1990. However, payments still were not forthcoming.

On July 19, 1990, after another threat of legal action, Welch offered a first mortgage on the property at 70-72 North Second Street to secure the debt (including now the personal debt he owed), allegedly telling Srein that his investment was used to improve that property. Welch purportedly assured Srein that, as the General Partner of Historical, he had the full authority to encumber the property. Srein accepted the offer, and Welch and Historical executed a promissory demand note and mortgage on the property in the amount of $500,000. This was to cover Srein's original investment, plus interest, an additional $50,000 that was part of the bargain, and related attorneys fees and costs. Welch also agreed to subordinate thefirst mortgage on the property, held by FMHA, to Srein's interest.

In January 1991, after not receiving payments, Srein initiated an action based on the demand note. Shortly thereafter, the property at 70 - 72 South Second Street was deeded to Srein from Historical in lieu of foreclosure. Welch and related entities were released from liability due to the transfer. The Witkowskis therefore claim Srein is properly a defendant transferee for the purpose of setting aside his ownership of the Second Street property which was originally owned by Historical, because it was fraudulently conveyed to him.

B.

The Witkowskis commenced an action principally against Welch, and the other entities he controlled, but they also named Srein in Count V of the plaintiffs' Second Amended Complaint. Count I, against Welch and Welch P.C., alleges that as investment advisors and fiduciaries to the Witkowskis' retirement plan, the $150,000 investment made to Historical constituted self-dealing and a breach of fiduciary duty. Count II also concerns the $150,000 investment, and alleges that the scheme to convert that

5

money to the defendant's own use constituted fraud. Counts III and IV alleged fraud concerning the investment by the Witkowskis' retirement plan into two other Welch-controlled ventures known as the Medic Monitor, and St. George Mortgage Associates, which are not relevant here. Count V, which names Srein as a defendant, is a fraudulent conveyance claim regarding the ownership and rights to the property at 70-72 North Second Street, Philadelphia. Count V claims that Srein paid no consideration for the property, and that he fraudulently conspired with Welch to defraud the retirement plan by filing false mortgages to permit Srein to leapfrog prior interests in the property.

The District Court, upon motion by defendant Welch, ordered that Counts I, II and V be subject to arbitration in accordance with the Agreement of Participation signed by the Witkowskis. The remaining matters were stayed pending the completion of arbitration. Defendant Srein, only named in Count V, filed a motion for reconsideration arguing that he was not a party to the participation agreement which compelled arbitration, and thus he should not be required to submit to it. The District Court agreed, and in a January 11, 1994 order directed that "Count V of the complaint involving Defendant Srein shall not be compelled to arbitration" but that "[t]he arbitration shall proceed in all other respects as previously ordered." App. 98. Whether this order removed the fraudulent conveyance issue with respect to all defendants, as the Witkowskis contend, or whether it simply removed Srein from the arbitration process while still mandating the other defendants to fully arbitrate that issue, is the gravamen of the present controversy.

After extensive hearings an arbitrator dismissed all of the Witkowskis' state law fraud claims contained in Counts I and II but found the defendants liable under ERISA claims in those same counts. An award of $150,000 was granted. Because this appeal centers directly on what the arbitrator did and did not decide, his opinion is set forth in detail.

AWARD OF THE ARBITRATOR

I. THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the Court Orders dated

6

March 11, 1993 and January 11, 1994, and having duly heard the proofs and allegations of the parties, AWARD as follows:

1. All state court common law claims of JOSEPH A. WITKOWSKI, M.D., GRACE WITKOWSKI, JOSEPH A. WITKOWSKI, M.D., P.C. DEFINED BENEFIT PENSION PLAN, hereinafter referred to as CLAIMANTS, set forth in Count I and II, are dismissed because of the:

  1.1 Expiration of the Statute of Limitations, and/or

  1.2 Failure to be pleaded and/or

  1.3 Failure of proofs

2. All claims against ROBERT G. WELCH, TRUSTEE SET FORTH in Count II, paragraphs 19-22 inclusive, are dismissed, because the designation of "ROBERT G. WELCH, TRUSTEE" is an insufficient designation of a Trustee, as a defendant. Without a designation of the Trust against which the claim is made, the designation of "ROBERT G. WELCH, TRUSTEE" is not a party sui juris.

3. The defense of the Statute of Limitations to th e filing of the ERISA claim, is Dismissed.

4. The claims of CLAIMANTS against INTREPID ONE SERVICES, INC., HISTORICAL SECOND STREET DEVELOPMENT ASSOCIATES, AND ROBERT G. WELCH, GENERAL PARTNER, are denied.

5. On the ERISA claim, set forth in Counts I and I I of CLAIMANTS' Complaint, an Award is entered in favor of JOSEPH A. WITKOWSKI, M.D., P.C., DEFINED BENEFIT PENSION PLAN and against ROBERT G. WELCH AND ROBERT G. WELCH, P.C., jointly and severally, in the amount of ONE HUNDRED FIFTY THOUSAND DOLLARS ($150,000.00).

* * * *

9. This Award is in full settlement of all claims submitted to this arbitration.

App. 134-35.

7

At the request of the Witkowskis, this award was subsequently confirmed by the District Court `in all respects.' Srein amended his complaint to include the defenses of arbitration and award and collateral estoppel, and then moved for summary judgment. Srein argued that because the arbitrator dismissed the Witkowskis' claim that Welch, the transferor, fraudulently conveyed the property, collateral estoppel should bar the Witkowskis from asserting any claim against Srein, who was the mere transferee in the transaction. The District Court agreed and granted Srein's motion. The Witkowskis appeal from that ruling.

C.

The District Court had jurisdiction over this matter pursuant to 29 U.S.C. 1132(e)(1). We have appellate jurisdiction pursuant to 28 U.S.C. S 1291. Our review of the District Court's grant of summary judgment is plenary, and we test the record by the same standard which the District Court was required by Fed.R.Civ.P. 56 to utilize. Kelley v. TYK Refractories Co., 860 F.2d 1188, 1192 (3d. Cir. 1988). This standard requires the trial judge to enter summary judgment if there is no dispute as to material facts and if the moving party is entitled to judgment as a matter of law. In this case, as in Kelley, the District Court made no findings regarding the existence of material facts, but instead rested its decision solely on the preclusive effect of the arbitrator's award. Factual disputes, ordinarily resolved on a motion for summary judgment in favor of the non-moving party, are not implicated in this appellate review. Accordingly, the only question on appeal is whether the District Court correctly applied the law in holding that the doctrine of collateral estoppel barred the Witkowskis' claim of fraud and fraudulent conveyance against defendant Srein, the transferee of real property.7

_____

7. We note that appellate courts, even within this Circuit, have reviewed the application and non-application of collateral estoppel under differing standards. Compare Raytech Corp. v. White, 54 F.3d 187, 190 (3d Cir. 1995) (abuse of discretion standard applies to review of District Court's decision to apply collateral estoppel), McLendon v. Continental Can Co.,

8

III.

The doctrine of collateral estoppel, now commonly
referred to as issue preclusion,8 prevents parties from
litigating again the same issues when a court of competent
jurisdiction has already adjudicated the issue on its merits,
and a final judgment has been entered as to those parties
and their privies. Schroeder v. Acceleration Life Ins. Co., 972
F.2d 41, 45 (3d. Cir. 1992). Issue preclusion "forecloses re-
litigation in a later action[ ] of an issue of fact or law which
was actually litigated and which was necessary to the
original judgment." Hebden v. Workmen's Compensation

_____

908 F.2d 1171, 1177 (3d Cir. 1990) (same), with Dici v. Commonwealth
of Pennsylvania, 91 F.3d 542, 547 (3d Cir. 1996) (plenary review of
doctrine's application) and Arab African Int'l Bank v. Epstein, 958 F.2d
532, 534 (3d Cir. 1992) (same). See also Winters v. Diamond Shamrock
Chemical Co., 149 F.3d 387, 391-92 (5th Cir. 1998) (abuse of discretion
standard applies); Keystone Shipping Co. v. New England Power Co., 109
F.3d 46, 50 (1st Cir. 1997) (de novo review of application of issue
preclusion); Berger Transfer & Storage v. Central States, Southeast and
Southwest Areas Pension Fund, 85 F.3d 1374, 1376 (8th Cir. 1996)
(decision not to apply issue preclusion reviewed for abuse of discretion);
Town of North Bonneville v. Callaway, 10 F.3d 1505, 1508 (9th Cir.
1993) (availability of collateral estoppel is a mixed question of law and
fact subject to de novo review); Bates v. Union Oil Co. of California, 944
F.2d 647, 651 (9th Cir. 1991) (abuse of discretion standard applies);
Sandberg v. Virginia Bankshares, Inc., 979 F.2d 332, 344 (4th Cir. 1992)
vacated and remanded for dismissal, 1993 WL 524680 (4th Cir. 1993)
(de novo standard applies to availability of collateral estoppel, abuse of
discretion standard applies to fairness of applying estoppel); United
States v. Sandoz Pharm. Corp., 894 F.2d 825, 826 (6th Cir.), cert. denied,
498 U.S. 810, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990) (de novo review). We
need not resolve whether or not an abuse of discretion standard should
apply to some facets of the collateral estoppel analysis because even
under the more exacting plenary review, the result of this case is the
same.

8. This doctrine is often confused with res judicata, which is now
commonly referred to as claim preclusion. Claim preclusion "gives
dispositive effect to a prior judgment if the particular issue, albeit not
litigated in the prior action, could have been raised." Bradley v.
Pittsburgh Bd. of Educ., 913 F.2d 1064, 1070 (3d Cir. 1990) (citations
omitted). Issue preclusion (or collateral estoppel),"bars relitigation
only
of an issue identical to that adjudicated in the prior action." Id.

Appeal Bd., 534 Pa. 327, 330, 632 A.2d 1302, 1304 (1993); see also Restatement (Second) of Judgments,S 27 cmt. c (1982) ("An issue on which relitigation is foreclosed may be one of evidentiary fact, of `ultimate fact' (i.e. the application of law to fact), or of law."). As the Supreme Court has observed, this doctrine reduces the costs of multiple lawsuits, facilitates judicial consistency, conserves resources, and "encourage[s] reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 415, 66 L. Ed.2d 308 (1980).

The Pennsylvania Supreme Court has cited approvingly to the Restatement of Judgments for the rule of issue preclusion. See Pennsylvania State Univ. v. County of Centre, 532 Pa. 142, 148-49, 615 A.2d 303, 306 (1992). The Restatement explains: "When an issue of fact or law is actually litigated and determined by a valid andfinal judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments S 27 (1982).

Stated another way, both parties agree that the following four requirements must be met in order to apply the doctrine and thus bar a potential claim:

> 1) the issue decided in the prior adjudication mus t be identical with the one presented in the later action;
>
> 2) there must have been a final judgment on the merits;
>
> 3) the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication; and
>
> 4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication.

Bortz v. Workmen's Compensation Appeal Bd., 546 Pa. 77, 81-82, 683 A.2d 259, 261 (1996); Safeguard Mut. Ins. Co. v. Williams, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975); Shaffer v. Smith, 543 Pa. 526, 528-30, 673 A.2d 872, 874 (1966); Kelley, 860 F.2d at 1194; Bradley v. Pittsburgh Bd.

10

Of Ed., 913 F.2d 1064, 1073 (3d Cir. 1990) Gregory v. Chehi, 843 F.2d 111, 121 (3d Cir. 1988); Rider v. Commonwealth of Pennsylvania, 850 F.2d 982, 989-90 (3d. Cir.), cert. denied, 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988).

A.

We have no doubt that the second and third criteria for issue preclusion have been fulfilled in this case. The doctrine of collateral estoppel can apply to the arbitration process in which the Witkowskis obtained a judgment against Welch, and that judgment could potentially bar them from pressing claims against Srein.9  Under Pennsylvania law, arbitration proceedings and their findings are considered final judgments for the purposes of collateral estoppel. See Dyer v. Travelers, 572 A.2d 762, 764 (Pa. Super. 1990) ("An arbitration award from which no appeal is taken has the effect of a final judgment on the merits."); Ottaviano v. Southeastern Pennsylvania Trans. Auth., 239 Pa. Super. 363, 370, 361 A.2d 810, 814 (1976); Restatement (Second) of Judgments S 84 (1982) ("[A] valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court."); Id. S 13 ("[F]or purposes of issue preclusion ... `final judgment' includes any prior adjudication of an issue in another

_____

9. The Witkowskis argue strenuously that the results of the arbitration cannot be a final judgment on the merits. They argue this conclusion for the following reason:

        Inasmuch as Count V was completely ignored by the award of the
        Arbitrator, and in that both Historical, and Welch as General
        Partner of Historical, are included in Count V, it cannot be said
that
        there has been a final judgment on the merits of either the
        fraudulent conveyance averments in Count V or on the non-
        fiduciary liability of Defendant Srein.

Appellants' Br. 17.

This argument is not properly addressed in the `final judgment on the merits' prong of collateral estoppel. Such argument is relevant to, and will be considered during, the `identity of issues' and `full and fair opportunity to litigate' analyses infra.

11

action that is determined to be sufficiently firm to be accorded conclusive effect.") The Witkowskis, in fact, had this award confirmed in full by the District Court. See 9 U.S.C. S 13 ("The judgment [confirming an arbitration award] so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.") Moreover, the full arbitration proceeding was `on the merits' because the arbitrator dismissed all state claims based on either the expiration of the statute of limitations, the failure to be pleaded, and/or failures of proof. Such grounds for the dismissals constitute a judgment `on the merits.' See e.g., Mellon Bank v. Rafsky, 369 Pa.Super. 585, 594, 535 A.2d 1090, 1094 (1987) (failure to produce sufficient evidence supports collateral estoppel); Restatement (Second) of Judgments S 27 cmt. d (1982) ("A determination may be based on a failure of the pleading or of proof as well as on the sustaining of the burden of proof.") Finally, the Witkowskis were a party to the prior proceeding, and thus, the third requirement was obviously fulfilled.10 What remains in contention is whether the issues were identical and whether there was a full and fair opportunity to litigate that issue in the prior proceeding. Each issue will be addressed in turn.

B.

The District Court found that the issue decided in the arbitration hearing was identical to the questions raised in Count V of the Witkowskis' second amended complaint. According to the district court, any claim against Srein was

_____

10. The fact that Srein was not a party, and in fact may have refused to testify at the arbitration hearing without being subpoenaed, is of no consequence to the application of collateral estoppel. Mutuality of the parties, once the rule, has now been abolished in Pennsylvania. See In re Estate of Ellis, 460 Pa. 281, 286–87, 333 A.2d 728, 730 31 (1975); Public Serv. Mut. Ins. Co. v. Cohen, 616 F.2d 704, 707 (3d Cir. 1980). The only requirement is, logically, that the party against whom estoppel is asserted be a party to the prior adjudication. This was the case here because the Witkowskis were parties to the arbitration proceeding. Appellant's concede this in their brief. Appellant Br. 10.

necessarily based on the same alleged fraudulent scheme as the fraud claims against Welch and Historical which were specifically dismissed by the arbitrator. This conclusion was buttressed by the second amended complaint, which specifically incorporated Count V into Count II. Thus, the dismissal of the fraud claims of Count II necessarily barred the fraudulent conveyance issue alleged in Count V.

The Witkowskis dispute this reasoning, asserting two distinct arguments in support of their position. First, they correctly point out that "[t]he arbitrator dismissed only all of Plaintiffs' state common law claims . . .." Appellants' Br. at 10. Thus, the dismissal of state common law fraud is not fatal to a statutory claim under the Pennsylvania Uniform Fraudulent Conveyance Act ("the UFCA"). 39 Pa.Stat.Ann. SS 351-363 (1991).11 Second, the finding of self-dealing and breach of fiduciary duty amounts to a finding of fraud under the federal common law embodied in the statutory scheme of ERISA. Thus, argue the Witkowskis, thisfinding is tantamount to a finding of facts sufficient to support Srein's independent liability as a "non-fiduciary knowingly participating in a fiduciary's breach of trust . ...." Appellants' Br. at 13.12 In sum, the Witkowskis believe they

_____

11. In Pennsylvania, the Uniform Fraudulent Conveyance Act ("UFCA") was repealed and re-enacted by the Act of December 3, 1993, P.L. 479, No. 70, codified at 12 Pa.Cons.Stat.Ann. 5101-5110, and renamed the Uniform Fraudulent Transfer Act ("UFTA"). The UFTA is applicable to transfers made after its effective date of February 1, 1994. The transfer which is the subject of the present appeal took place in 1991, therefore, the UFCA is still applicable to this matter.

12. The Witkowskis claim that Srein is liable under Federal common law, discerned from the provisions of ERISA and trust law principles, for a non-fiduciary knowingly participating in a fiduciary's breach of duty. See Lowden v. Tower Asset Management, 829 F.2d 1209, 1220 (2d. Cir. 1987). This second argument can be disposed of because it was never made to the District Court. This Court consistently holds that arguments made for the first time on appeal, will generally not be considered. Harris v. City of Philadelphia, 35 F.3d 840, 845 (3d Cir. 1994). Before the submissions to this court, Count V seemingly concerned only the fraudulent transfer. Nowhere was Srein's potential liability as a non-fiduciary under federal common law based on ERISA raised. This

13

should be given the opportunity to prove that they were creditors of Historical, that a fraudulent transfer of Historical's only asset was made through its general partner Welch to Srein, without any consideration passing to Historical, and that Historical was rendered insolvent by virtue of this conveyance.

We disagree. While we are sympathetic to a prevailing plaintiff who seeks to somehow satisfy a substantial judgment against a seemingly judgment-proof defendant, established judicial principles and their application to the record before us cannot be ignored. That record demonstrates that a plain reading of the second amended complaint, an understanding of how the issues got to arbitration, confirmed by extensive testimony at the arbitration hearing and an analysis of the legal issues raised in the complaint and covered during arbitration--but pressed to be litigated once again only now in federal court --lead to the inescapable conclusion that "the ultimate and controlling issues have been decided in a prior proceeding in which the present parties actually had an opportunity to appear and assert their rights." Helmig v. Rockwell Mfg. Co., 389 Pa. 21, 131 A.2d 622, 627, cert. denied, 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44 (1957) (citations omitted).

The second amended complaint asserted five counts against numerous defendants.13 Count I describes the $150,000 investment the Witkowskis made in Historical Second Street Associates, at the direction of Welch. It then asserts that this constituted self-dealing and a breach of Welch's fiduciary duty, and demands judgment for losses pursuant to 29 U.S.C. S 1109(a), a provision of ERISA. Count II repeats these same allegations concerning the $150,000 investment and alleges that this was part of a

_____

includes in the Witkowskis' submissions in opposition to Srein's first summary judgment motion, which extensively discusses the fraudulent conveyance issue, App. 80-87, as well as in the Witkowskis' opposition to Srein's motion to amend and for summary judgment, App. 201-07. Having not raised this issue below, this court need not and will not comment on its merit or viability in the Third Circuit.

13. Counts III and IV are not relevant to the present appeal.

14

scheme to defraud the Witkowskis and convert their moneys to other uses. Of significance in this count is that it specifically incorporates the remaining paragraphs of the complaint, and thus, it covers the "scheme and artifice to defraud and obtain money from Plaintiffs by means of false and fraudulent activities, omissions, nondisclosures and misrepresentations as set forth" in the remaining counts, including Count V. App. 24. Judgment was demanded there for $150,000 plus interest, which presumably must refer to the $150,000 investment by the Witkowskis into Historical. Thus, Count II, by its own terms, covered the fraudulent conveyance issue with respect to Welch and Historical and which the Witkowskis now attempt to revive only against Srein.

The process by which this case and different counts of the complaint reached arbitration is also necessary to understanding that which the arbitrator considered. Originally, the District Court ordered that Counts I, II and V be submitted to arbitration. Upon Srein's motion for reconsideration, however, the court held that "Count V of the Complaint involving Defendant Srein shall not be compelled to arbitration[.]" A fair reading of this second order, given the arbitrator's indications quoted infra, suggests that Count V was removed from the arbitrator's purview only as to the defendant Srein.

This reading of the complaint and the District Court's orders are no doubt ambiguous, which may have been the precise reason why the arbitrator himself also attempted to define the issues with the assistance of both parties. In the following colloquy, Mr. Caine is the arbitrator, Mr. Doty and Mr. Scutti represent the plaintiff Witkowskis, and Mr. Grimes represents the defendant Welch.

>     MR. CAINE: I'm attempting to define the issues so that anybody who looks at this transcript later on will know what it is that we're going to deal with in terms of the issues which are before us ...
>
>     * * *
>
>     As I understand it, the questions that are being raised in this matter are, one, did Mr. Welch, who is one of the respondents in this matter, breach any duty to the

15

claimants as a result of one, the investment by the claimant of the sum of $150,000 in Historical Second Street Development Associates. And the second

question is whether the transfer of that investment to Mr. Srein without adequate consideration was a voidable transaction relative to the claimants. Is that a fair statement?

MR. DOTY: Yes.

MR. CAINE: Mr. Scutti?

MR. SCUTTI: Yes.

MR. GRIMES: As I understand the claimant's claim.

MR. CAINE: Now as I understand it, the remedies being requested by the claimant in this matter are, one, an award for monetary damages not to exceed $150,000 plus interest, costs, and attorneys fees; is that correct, Mr. Doty?

MR. DOTY: Correct.

MR. CAINE: Two, that there is a demand for a reconveyance of the Historical Second Street Development Associates, something that was made to Mr. Srein -- apparently a conveyance of some kind.

MR. SCUTTI: I think, sir, the best way to describe it would be a reconveyance of the property 70-72 North Second Street.

MR. CAINE: From ...

MR. SCUTTI: From Srein back to Historical Second Street Development Associates.

MR. CAINE: Does that fairly state the remedy you're seeking with regards to the reconveyance issue?

MR. SCUTTI: Yes.

MR. CAINE: Three, that you're asking for the reinstatement of the mortgage as collateral security for Dr. WITKOWSKI's investment; is that correct?

MR. DOTY: That is correct.

App. 284-287 (emphasis added).

This discussion made it clear what the arbitrator was considering; the evidence and testimony subsequently submitted confirmed this fact. Nonetheless, the clear framing of the issues and evidence considered during the hearing is not determinative as to whether such issues were actually resolved one way or the other. And the arbitrator's award was not a model of clarity as to what was and was not decided.14 Yet, the framing of the issues before the arbitrator and the record created during such proceedings inform this Court's analysis of what the arbitrator's ultimate award means. Such an award was not created in a vacuum; neither can it be interpreted in one.

Turning to the award itself, the District Court found that the non-ERISA claims, including the fraudulent conveyance issue, were inextricably linked to the same alleged fraudulent scheme dismissed by the arbitrator. We agree. Implicit in the arbitrator's award is that neither Historical nor Welch, as its General Partner, committed the fraud complained of in plaintiffs' complaint. Indeed, the only place in plaintiffs' complaint where Welch is recognized as the General Partner of Historical (or any other entity for that matter) is in Count V, the fraudulent conveyance claim. Yet, in the arbitration award, the "claims of CLAIMANTS against . . . ROBERT G. WELCH, GENERAL PARTNER [were] denied." App. 134. Thus, this fraud issue which was clearly addressed in arbitration was also dismissed as to a party who was only named in the fraudulent conveyance count. In this manner, it is clear that dismissal of the fraudulent conveyance issue was `essential' to the arbitrator's award.15 Even if there was not

_____

14. The American Arbitration Association in fact discourages arbitrators from specifying the bases of their decisions, fearing that such specification would open up avenues of appeal for unsuccessful litigants. See G. Richard Shell, Res Judicata and Collateral Estoppel Effects of Commercial Arbitration, 35 UCLA L. REV. 623, 632 (1988).

15. Some Pennsylvania courts state that there are actually five--instead of four--elements to the issue preclusion doctrine. The fifth element requires that the determination of an issue in the prior case must have been `essential' to the previous judgment. See Mellon Bank v. Rafsky, 369 Pa.Super. 585, 593, 535 A.2d 1090, 1093 (1987). Whether there are four or five formal elements to the doctrine is not of consequence, nor is

a precise identity of the `causes of action' asserted, it would be of no legal consequence; there is no such requirement for the application of issue preclusion. Only the issues need be the same. See Rider, 850 F.2d at 990 n. 11. And in this case, the issues were "in substance the same" as that which the Witkowskis press to litigate once again. Raytech Corp. v. White, 54 F.3d 187, 192–93 (3d Cir. 1995). Accordingly, the identity of issues requirement is fulfilled in this case.

C.

The final requirement for the application of estoppel is that the party against whom it is asserted must have had a full and fair opportunity to litigate the issue in question in the prior proceeding. The District Court found that the appellants did indeed have an opportunity to fully and fairly litigate the fraudulent conveyance issue, citing as proof the portion of the arbitration dealing with the tracing of funds from Srein to the Second Street property, the closing presentation of plaintiffs' counsel in which he asked for a reconveyance, and the proposed findings of fact and conclusions of law plaintiffs submitted to the arbitrator.

The Witkowskis argue, unconvincingly, that "Dr. Witkowski's counsel could have presented compelling argument and evidence regarding a fraudulent transfer, but the Arbitrator would not and refused to make findings on that issue, as he believed Count V in its entirety had been ordered out of the arbitration proceedings." Appellants' Br. 19. Yet the record demonstrates otherwise.

The portions of the transcript quoted by the Witkowskis in support of their claimed inability to argue the fraudulent conveyance are selectively chosen, and indeed parsed from

_____

it for us to decide. In any event, the doctrine is essentially the same under either analysis. Even with just the four formal elements, clearly there must be a nexus between the first two. In other words, "[t]he identical issue must have been necessary to final judgment on the merits." Balent v. City of Wilkes–Barre, 542 Pa. 555, 564, 669 A.2d 309, 313 (1995) (citing Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)).

18

a much fuller record. For example, appellants quote the following.

> Mr. Caine: Now, I repeat that Counts I and II are the claims to be arbitrated. Actually, Count II is the only claim, and Count I is incorporated by reference, and, therefore, the matters set forth in Counts I and II are the claims to be arbitrated, and those Counts I and II are set forth in the Federal Court Complaint which has been attached to the submission in this case; is that correct?
>
> Mr. Grimes: That's correct. (Welch's attorney)
>
> Mr. Doty: That's correct. (The Witkowskis' attorney)
>
> Mr. Caine: I want the record to show that.

App. 283.

What the Witkowskis fail to include, however, is what followed that exchange. Mr. Caine, the arbitrator, continued speaking and, putting into context the previous excerpts, said the following:

> MR. CAINE: As I understand it, this claim is also limited to the matters involving the Historical Second Street Development Associates, 70-72 North 2nd Street, Philadelphia, Pennsylvania; is that correct?
>
> MR. DOTY: Yes; however, collateral to that is the matter of St. George Mortgage Associates, which has to do with Historical.
>
> MR. CAINE: You're not precluded bringing in or from mentioning any related matters.
>
> MR. DOTY: Okay.
>
> MR. CAINE: It's just my understanding that the investment in the Historical Second Street Associates, 70-72 North Second Street, Philadelphia, Pennsylvania, was the basis for the claim --
>
> MR. DOTY: Arbitration; that's correct.
>
> MR. CAINE: -- which is now being arbitrated.
>
> MR. DOTY: That's correct.

19

MR. CAINE: I'm attempting to define the issues so that anybody who looks at this transcript later on will know what it is that we're going to deal with in terms of the issues which are before us, and I don't want to go all over the field and get involved in all kinds of matters that are not relevant, so I'm defining the scope of what's relevant, if I may, and please correct me if you want to modify these in any way.

App. 283 – 285.

The discussion continued as to the remedies requested, which is quoted verbatim above in the section on the identity of issues. As that revealed, both sides to the arbitration and the arbitrator understood at that time that the fraudulent conveyance issue was very much at issue.

Following that exchange, there was also a discussion on the jurisdiction of the arbitrator to actually reconvey the property in issue, because Srein, as the titled owner, was not a party to the arbitration. The arbitrator recognized this, but in a foretelling comment, noted the following:

> I would agree with that [that the arbitrator did not have the power to reconvey the property]. That doesn't mean that I can't make a finding that the property shouldn't be conveyed, and if somebody wants to use that in some other proceeding, they might be able to do that. They might bring an action against Mr. Srein and say somehow the issue is to litigate, and whether anybody would argue that's res judicata as to Srein and binding upon him, I don't know.
>
> But if we find it is a fraud, that's something which I might find could be done or should be done or recommended that it be done. So I'll deal with that when the time comes.

App. 288-89.

The record does not reflect any objection to these statements. Instead, the record reflects an explicit understanding that the arbitrator's findings might have preclusive effect in subsequent litigation.

The Witkowskis also claim that Srein was unavailable to present any evidence or participate in any other way in the

20

proceedings, which thus prevented them from fully and fairly litigating the claims against him. Again, the record demonstrates that this is only partly correct. While Srein was not a party to the arbitration and did not in fact participate nor would he voluntarily, he could have been subpoenaed as a witness. Discussions were held on the record in which the arbitrator made clear his power--and willingness--to subpoena any witness necessary to either side's case. App. 519-20. No explanation is given why these witnesses were never called. Indeed, there is nothing else besides this testimony that the Witkowskis have cited which they contend they did not have the opportunity to present at the arbitration.

Moreover, the findings of fact and conclusions of law submitted by the Witkowskis, including six pages detailing what allegedly happened concerning the conveyance, proposed that the transfer be declared fraudulent under Pennsylvania law App. 156-61. This submission is indicative of the range and scope of the arbitration hearing and the relief sought by plaintiffs.

A party does not have an opportunity for a full and fair hearing when "procedures fall below the minimum requirements of due process as defined by federal law." Bradley, 913 F.2d at 1074. See also Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982) (full and fair opportunity to litigate presumed when state proceedings satisfy minimum procedural requirements of due process); Rider, 850 F.2d at 991. The extensive arbitration hearing held here did not fall below this standard. That the arguments made during the arbitration hearing were not accepted in full by the arbitrator does not mean that the Witkowskis were prevented from fully presenting them. The District Court did not err in its decision to apply the doctrine of collateral estoppel. The Witkowskis cannot now be heard to complain that they did not have a full and fair opportunity to litigate the issue.

D.

The original defendant, Welch, apparently manipulated many different corporations he controlled and investors he

21

courted to obtain and then manipulate funds. The fall-out
of the real estate market in the late 1980s led to the
collapse of his scheme. In the case of the Witkowskis, he
squandered their investment. The evidence the arbitrator
received relating to all of this was quite extensive and
permitted him to determine that Welch breached his
fiduciary duty owed to the Witkowskis.

The Witkowskis have a judgment against Welch for their
full investment based on this, and understandably, they are
looking to reach assets with which to satisfy it. The former
property of Historical at 70-72 North Second Street is the
most logical candidate. Yet the extensive record
demonstrates that the arbitrator considered all of the facts,
at least with respect to Welch and all related entities, and
dismissed with one exception the claims of Counts I and II.
This necessarily included, for all the foregoing reasons, the
fraudulent conveyance claim. Despite the Witkowskis'
protestations to the contrary, the District Court did not err
in applying the doctrine of collateral estoppel to dismiss the
suit against Srein.

The District Court wrote in a footnote that,

> It would be an anomalous result to have Welch and
> Welch P.C. cleared of any liability for the alleged
> fraudulent scheme to convert assets of the Plan, while
> the same claims could still proceed against Srein,
> whose only alleged involvement in the transaction was
> to accept a mortgage on the Second Street Property to
> satisfy a judgment against Welch.

(D.C. Opinion, April 14, 1997, p. 6 n.4). To this we add the
teachings of the Pennsylvania Supreme Court, writing in a
related context:

> [I]f the defendant's responsibility is necessarily
> dependent upon the culpability of another, who was
> the immediate actor, and who, in an action against him
> by the same plaintiff for the same act, has been
> adjudged not culpable, the defendant may have the
> benefit of that judgment as an estoppel, even though
> he would not have been bound by it had it been the
> other way. And we think it could not well be otherwise,
> for, when the plaintiff has litigated directly with the

22

> immediate actor the claim that he was culpable, and,
> upon the full opportunity thus afforded for its legal
> investigation, the claim has been adjudged against the
> plaintiff, there is manifest propriety, and no injustice,
> in holding that he is thereby concluded from making it
> the basis of a right of recovery from another who is not
> otherwise responsible.

C.S. Helmig v. Rockwell Mfg. Co., 389 Pa. 21, 32-33, 131 A.2d 622, 628, cert. denied, 355 U.S. 832, 78 S.Ct. 46, 2 L.Ed.2d 44 (1957). We find this reasoning persuasive and applicable to this case. Here, the fraud and fraudulent conveyance issues brought against Welch and Srein are so inextricably intertwined with one another that the disposal of the claims against the one is necessarily fatal to the alleged claim against the other.

This opinion, similar to the briefs submitted, is necessarily fact intensive as the facts are what complicate this issue. In holding that collateral estoppel applies to this unique case, we caution against its invocation in most others without extreme care. Indeed, doubts about its application should usually be resolved against its use. See Kauffman v. Moss, 420 F.2d 1270, 1274 (3d Cir.1970) ("Reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel.") While we are mindful of these concerns and feel it necessary to address them specifically, they are not implicated in the facts of this case, and thus not a bar to issue preclusion applied here.

IV.

For the foregoing reasons, the judgment of the District Court will be affirmed.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

23